THE PEOPLE ex rel. Paul W. Abt, County Collector, Appellee, vs. FRANK B. BOWMAN, Appellant.

*Opinion filed December 21, 1911.*

· 1. TAXES—*the board of election commissioners have power to draw warrants on county treasury in certain cases.* An item of county tax "for warrants of the board of election commissioners" is a proper item where there is a city in the county having such a board, as sections 4, 5 and 6 of article 7 of the City Elections law provide for the payment of the expenses of general county and State elections in such city, and require the election commissioners to audit the claims therefor and draw warrants on the county treasury.

2. SAME—*when all expenses of elections need not be included in one item of county tax.* Where there is a city in the county which has adopted the City Elections law it is not improper for the county tax levy to specify an· item for "election expenses" and another item "for warrants of the board of election commissioners," since the expenses of general county and State elections held in the city are paid on warrants drawn by the election commissioners, whereas the election expenses for the county outside of the city are audited and paid by the board of supervisors.

3. SAME—*item "for warrants of board of election commissioners" applies only to election expenses.* An item in a county tax levy "for warrants of the board of election commissioners" can apply only to the expenses of general county and State elections held in the city, as the salaries of the clerk and members of the board are paid by the county on the warrant of the county judge, and the expenses of the board, other than salaries, are paid by the city on the warrant of the county judge.

4. SAME—*when a levy for "salary, clerk hire and expenses of county treasurer" is proper.* An item of a county tax levy "for salary, clerk hire and expenses of the county treasurer" is not improper in a county where· the county treasurer is *ex officio* supervisor of special assessments at a fixed compensation, even though the treasurer's salary must be paid from the fees of his office; nor is such item illegal because it groups "salary, clerk hire and expenses" and levies a gross sum for those purposes. ·

5. SAME—*what items of a county tax levy are not sufficiently definite.* Items in a county tax levy "for county farm, $25,000," "for county jail, $15,000," "for workhouse, $1200," and "for court house, $35,000," are not sufficiently definite to satisfy the statute, since they do not disclose whether the money is needed to buy

grounds and buildings, or to improve buildings, or for the general running expenses of the several institutions; items for "salaries of county appointees" and "for other salaries" are also too general.

6. SAME—*a county levy "for State institutions" is not illegal.* An item of a county tax levy "for State institutions" is not illegal upon the alleged ground that there is no law making the county liable to contribute to the support of State institutions, where it is manifest the item was intended for the support and maintenance of insane paupers of the county in the State hospitals for insane.

7. SAME—*item of county levy "for assessments" is too general.* An item of a county tax levy "for assessments" cannot be sustained as having been intended to cover the necessary expense of revising assessments of the county, where there is nothing in the levy to indicate that the item was for that purpose.

8. SAME—*item of county levy "for fees of county officers" may be sustained.* An item of a county tax levy "for fees of county officers," when taken in connection with the statute providing for fees which must, in the first instance, be paid by the county to certain county officers and applied by the latter to the payment of their salaries, is sufficiently definite to give the tax-payer information as to the purpose of the levy.

9. SAME—*when an item of county levy for "bridges" is proper.* An item of a county tax levy for "bridges," which is intended for the purpose of raising a fund to meet such calls for county aid to townships as may be made under proper petitions, must be sustained, where the only objection is that the term "bridges" is not sufficiently definite, as that term fairly includes the building of new bridges, the repair of old ones and the building of approaches or abutments. (*People* v. *Chicago and Northwestern Railway Co.* 249 Ill. 170, distinguished.)

10. SAME—*when item "for sundry and general expenses" will be sustained.* An item of a county tax levy of $1000 "for sundry and general expenses, the exact nature of which cannot be ascertained in advance," will be sustained where the county making the levy is a large and populous county, as the validity of such a levy depends upon the amount levied, considered in connection with the size of the levying municipality.

11. SAME—*an item of county levy "for stenographer's fees," is not improper.* An item of a county tax levy of $150 "for stenographer's fees" is not improper.

12. SAME—*when an appropriation ordinance is not invalid as amending a void ordinance.* Where a second appropriation ordinance, which is complete in itself, is published in the manner and within the time required by law, it is valid notwithstanding it

states in its title that it is an ordinance to amend a former appropriation ordinance which for want of publication had not become effective, as such statement may be rejected as surplusage.

13. SAME—*statute fixing the time for passing an appropriation ordinance does not include sanitary districts.* Paragraph 89 of the Cities and Villages act, (which is section 2 of article 7 of said act,) requiring the appropriation ordinance to be passed in the first quarter of each fiscal year, refers only to cities and villages, and does not include other municipal corporations, such as sanitary districts, which have power to levy taxes.

14. SAME—*section 121 of the Revenue act, concerning county taxes, does not apply to sanitary districts.* Section 121 of the Revenue act, requiring the county board, annually, at its September session, to determine the amount of taxes to be raised for county purposes and requiring the several purposes to be stated separately, has no application to a sanitary district.

15. SAME—*time when a tax levy ordinance of sanitary district must be passed.* Section 17 of the Sanitary District act, which is the only limitation in regard to the levying of taxes by such districts, requires the taxes to be levied by an ordinance specifying the purposes of the levy and requires a certified copy to be filed with the county clerk before the second Tuesday in August, hence there is no requirement as to when the ordinance shall be passed, if passed in time to permit the copy to be filed as required.

16. SAME—*fact that bonds are payable in one year does not justify treating tax to pay them as a levy for current expenses.* The fact that bonds to pay which a tax is levied by a sanitary district are payable in one year does not justify treating the tax as a tax for current expenses and subjecting it to a reduction under the amended Revenue law, as there is nothing to prevent a municipal corporation, acting in good faith, from borrowing money for one year and issuing bonds therefor, there being no question of exceeding the constitutional limit of indebtedness involved.

17. SAME—*court cannot change tax levy from one purpose to another.* The fact that a tax levy by a sanitary district to pay bonded indebtedness and interest may be illegal, as being a mere shift or device to prevent a reduction under the amended Revenue law, would not authorize the court to change the levy as made by the ordinance to a levy for current expenses or any other purpose.

18. SAME—*what action by sanitary district trustees is not subject to review.* If the board of trustees of a sanitary district, acting in good faith, deem it more advisable to borrow money for one year and issue bonds therefor than to issue tax-anticipation warrants or contract for work, to be paid for as the taxes are col-

lected, the exercise of their judgment in that regard is not subject to review by the courts, provided their action is not unlawful.

19. COUNTIES—*compensation of treasurer as supervisor of assessments is an earning of the office.* The amount fixed by section 2 of the act of 1898 as compensation to the county treasurer for his work as supervisor of assessments is an earning of the office, the same as any other fees and commissions, and when paid by the county must be applied, like other earnings, to the payment of the salary fixed by the county board for the office of county treasurer.

APPEAL from the County Court of St. Clair county; the Hon. JOHN B. HAY, Judge, presiding.

J. M. FREELS, and TURNER & HOLDER, for appellant.

F. J. TECKLENBERG, State's Attorney, (DAN MC-GLYNN, and JOHN E. HAMLIN, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Paul W. Abt, as county treasurer and collector of taxes for St. Clair county, made application to the county court, at the June term thereof, 1911, for judgment against certain lands and lots described in the delinquent list, for the taxes due and unpaid for the year 1910. Frank B. Bowman filed fifteen objections to the rendition of judgment against the lots and lands described in the delinquent list owned by him. Some of these objections were sustained in part and the amount for which judgment was asked was reduced and judgment was rendered for the amount for which the court found the lots and lands were liable. Other of the objections were overruled altogether and judgment rendered for the amount shown to be due by the collector's books. The judgment was excepted to by the objector, and he has brought the record to this court by an appeal.

Appellant's first objection questions the validity of the county taxes because, it is alleged, a number of items are not sufficiently specific and are for that reason not prop-

erly levied upon appellant's property. The several items of county taxes to which appellant made objection are as follows: For warrants of the board of election commissioners, $7500; for salary, clerk hire and expenses of the county treasurer, $4500; for county farm, $25,000; for county jail, $15,000; for workhouse, $1200; for court house, $35,000; for salaries of county appointees, $15,000; for other salaries, $4500; for State institutions, $5000; for assessments, $2000; for fees of county officers, $15,000; for stenographer's fees, $150; for bridges, $5000; for sundry and general expenses, the exact nature of which cannot be ascertained in advance, $1000.

Appellant objects to the first item, being a levy "for warrants of the board of election commissioners, $7500." The specific objection made to this item is, "that there is nothing in the statute which authorizes the board of election commissioners to issue warrants against the county funds." The city of East St. Louis, in said county, has a board of election commissioners, under whose supervision elections in that city are held. Appellant apparently overlooked paragraphs 284, 285 and 286 of the Election law, (Hurd's Stat. 1908, p. 981,) which make provision for the payment of the expenses of all elections held in cities which have adopted the act, and which make special provision for the registration of voters and the conducting of elections in cities where that act has been adopted. Paragraph 284 provides for the payment by the city of all the expenses of holding city elections and special elections in any part of such city at which a city officer is elected. Paragraph 285 provides for the payment by the county of such expenses at all general county and State elections held in such city. It will thus be seen that by these two sections elections held in such city are divided into two classes, and the expense of holding one class is to be paid by the city and the expense of the other class by the county. Paragraph 286 of the act provides that "said board of election commissioners

shall audit all the claims of judges and clerks of election and shall draw a warrant therefor upon such city or county treasury, as the case may be." This statute expressly authorizes the board of election commissioners to draw warrants on the county treasury for the expenses of holding county and State elections, and it was therefore within the power of the board of supervisors to levy a tax to pay warrants drawn upon the county treasury in payment of the expenses of such elections as are properly chargeable to the county. This tax has nothing to do with the salaries of the board of election commissioners and their clerks. There is a levy of $4600 in another item which is not objected to, that is levied for the salaries of clerk and members of the board of election commissioners. The salaries of the clerk and members of the board of election commissioners are fixed by the statute for the several classes of counties and are specifically made payable out of the county treasury upon the warrant of the county judge, while the expenses of the board of election commissioners other than salary are to be paid by the city upon the warrant of the county judge. The items for which the board of election commissioners are authorized to draw warrants upon the county treasury are not the expenses of the board but the expenses of holding elections for county and State officers. There is also another item of $12,000 levied for election expenses, and this item is not objected to, but it is insisted by appellant that all expenses in connection with elections which the county is liable for should be paid from this general levy. We see no objection to separating the election expenses into two items, since the claims for county and State elections held in the city of East St. Louis are to be audited and paid on the warrant of the board of election commissioners, while the election expenses for the county outside of the city are to be audited and paid by the board of supervisors. It was entirely proper to levy a separate tax to meet these two items of county expenses. The ob-

jection to the levy for warrants of the board of election commissioners was properly overruled.

The next item objected to is "for salary, clerk hire and expenses of the county treasurer, $4500." There are two objections made to this item: First, that the salary of the county treasurer is payable only out of fees of his office; and second, that it is illegal because it groups "salary, clerk hire and expenses" and levies a gross sum for those purposes. Under the statute the county treasurer is *ex officio* supervisor of assessments, and the statute provides that in counties of the class to which St. Clair belongs, the compensation of the treasurer for supervising assessments is $1000 per annum. The county board fixes the compensation of the treasurer for his work as treasurer by resolution, and under the law his salary as treasurer is only payable out of fees and commissions. The amount thus fixed is the only compensation to which such treasurer is entitled. The act of 1898, making the county treasurer *ex officio* supervisor of assessments, did not create a new office but simply added new duties to the office of county treasurer. (*Foote* v. *Lake County*, 206 Ill. 185; *Parker* v. *Richland County*, 214 id. 165.) The amount fixed by section 2 of the act of 1898 as compensation to the county treasurer as supervisor of assessments makes such amount an earning of the office, the same as any other fees or commissions, and when paid by the county must be applied, like other earnings, to the payment of the salary fixed by the county board as salary for the office of county treasurer. Since the county must pay the county treasurer the amount due him as supervisor of assessments, it was proper to levy a tax for such purpose. The second objection to this item is not well taken. There is no valid objection to levying a gross sum for several different purposes where the several purposes are properly embraced with some general designation; and particularly is this true where it is difficult, in advance, to determine the amount of the sev-

eral items. This court has steadily adhered to the rule that it is necessary to a valid levy of county taxes to state the amount for each purpose separately. In the construction and enforcement of the statute which imposes this duty upon the county board this court has sought to give the statute a reasonable and common sense meaning, so as to avoid making it difficult or impossible for boards to levy county taxes. Thus, in *People* v. *Cairo, Vincennes and Chicago Railway Co.* 237 Ill. 312, this court held that the term "court expenses" was sufficiently definite without specifying a particular sum for jury fees, bailiff fees, and the like. "Salary, clerk hire and expenses of county treasurer" would seem to be sufficiently definite to give the tax-payer information respecting the purposes for which the tax was levied. The objection to this item was properly overruled.

The next item to which objection is taken is $25,000 for county farm. The objection to this item is that it is not sufficiently certain. Following this are items "for county jail, $15,000," "for workhouse, $1200," and "for court house, $35,000," all of which are objected to because they are not sufficiently specific and certain. In our opinion the objection to these items should have been sustained for the reason stated. Twenty-five thousand dollars "for county farm," $15,000 "for county jail," $1200 "for workhouse" and $35,000 "for court house" does not disclose whether the money is levied to buy grounds and buildings or to improve buildings, or for the general running expenses of the several public places mentioned. In *People* v. *Cairo, Vincennes and Chicago Railway Co.* 243 Ill. 217, this court held that a levy for "public buildings account" and "county jail fund account" was not sufficiently specific to meet the requirements of section 121 of the Revenue act. We do not see what information the tax-payer would be able to get from the expressions "for court house," "for workhouse," "for county jail" and "for county farm." These several expressions are so vague and general that

they might be construed to apply to any one of several different purposes.

There is an item objected to of $15,000 which is levied for "salaries of county appointees." There is no intimation as to who these appointees are, by whom they are to be appointed or for what purpose, or what the compensation of any of said appointees is. The objection to this item should have been sustained. The same observation applies to the levy of $4500 "for other salaries." These items are entirely too general, and may be equally applicable to any one of a number of different officers.

The next item objected to is, "for State institutions, $5000." This item is objected to because, it is said, there is no law making the county liable to contribute to the support of State institutions; that State institutions are supported by funds provided by the legislature, and hence this item is improperly levied. It is not claimed that this item is not sufficiently specific. It was manifestly levied to pay for the support and maintenance of insane paupers in the insane hospitals of the State. The county may become liable to State institutions for the maintenance of insane paupers that are committed to the State institutions, and this levy is sustainable under the law that imposes such liability on the county.

The next item objected to is the levy "for assessments, $2000." Appellee contends that this item is to cover the expenses necessarily incurred in revising the assessments of the county. If so, it should have been stated to be for such purpose. The words used, "for assessments," may have different meanings. The tax-payer is entitled to know the purpose for which the tax is levied. This levy does not furnish such information.

The next item objected to is "for fees of county officers, $15,000." It is objected that this item should have been more specific. In our opinion this objection is not well taken. There are certain classes of services rendered

by the county clerk in connection with making up transcripts of taxable property, keeping assessor's return, extending State and county taxes, and various other services in connection with the revenue, for which he is allowed by law certain fees which are to be paid by the county. So, also, is the circuit clerk allowed fees for attending upon courts, and the sheriff is allowed fees in criminal cases where the defendant is acquitted or otherwise discharged without the payment of costs. All of these fees, and others of like character, are to be paid in the first instance by the county, and are to be by the respective officers charged to themselves and applied to the payment of their salaries. We are of the opinion that a levy for fees of county officers, taken in connection with the statute, is sufficiently certain and definite to give the tax-payer information as to the purpose for which such taxes are levied.

The objection to the item of $150 "for stenographer's fees" was properly overruled.

The item next objected to is $5000 for bridges. The only objection here made to this item is that it is not sufficiently certain. This tax was evidently levied to enable the county to aid townships in building bridges whenever a proper petition was presented showing that the county was liable to contribute one-half of the cost of constructing a bridge. Appellant relies on the case of *People* v. *Chicago and Northwestern Railway Co.* 249 Ill. 170, in support of his objection to this item. In that case the levy was for bridges, $25,000. In connection with the other evidence in that case certain petitions for county aid in the building of bridges were introduced in evidence. It was found upon examination that some of these petitions were insufficient to justify an appropriation of county funds for the purposes stated. The holding of this court was that the objection should have been sustained to that part of the bridge levy which was called for by the insufficient petitions, and that as to that part called for by the petitions of townships

which showed that the county was liable it should have been overruled. In the case at bar the levy is for the purpose of raising a fund to meet such proper calls as may be made upon the county to aid in the construction of bridges. This court, in effect, held that the levy "for bridges" was sufficiently definite, and that the item "bridges" fairly includes the building of new bridges, the repair of old ones and the building of approaches or abutments. The only objection here being that this levy is not sufficiently certain, the court did not err in overruling such objection.

The next item objected to is $1000 "for sundry and general expenses, the exact nature of which cannot be ascertained in advance." This objection was properly overruled. While the levy is not for "contingent expenses" in terms, yet from the language employed it is clear that such was the purpose in making this levy. Such levies, when reasonable, have been sustained by this court. Whether or not a levy for contingent expenses is valid depends upon the amount levied, when considered in connection with the size of the municipality levying the same. In *People* v. *Chicago, Burlington and Quincy Railroad Co.* 248 Ill. 81, this court held that $500 levied for contingent expenses in Whiteside county was an unreasonable charge and therefore not valid, while in the case of *People* v. *Illinois Central Railroad Co.* 237 Ill. 324, this court held that $1000 levied for contingent expenses in Winnebago county was not an unreasonable amount. St. Clair county is a much larger and more populous county than Winnebago. Treating this item as a levy for contingent expenses, as we think it is, the objection was properly overruled.

Appellant objects to all of the taxes levied by the city of East St. Louis on the ground that the appropriation ordinance was not published in the manner required by law. Appropriation ordinance No. 1633 was properly passed by the city council but was not published within one month thereafter, as required by the statute. That ordinance was

therefore invalid. Subsequently, and within the time re-
quired, the city council passed ordinance No. 1634, which
was also an appropriation ordinance, and that ordinance
was published in the manner and within the time required
by the statute. The specific objection made to the city
taxes of East St. Louis is, that the second appropriation
ordinance recited in its title that it was an ordinance to
amend ordinance No. 1633, and since that ordinance never,
in fact, became an ordinance at all for want of publica-
tion, the second ordinance, purporting to amend a void
ordinance, is invalid. This contention cannot be sustained.
Ordinance No. 1634 is a complete ordinance in and of it-
self, and appropriates $581,000 to defray the necessary ex-
penses and liabilities of said city and distributes the appro-
priation to the various purposes and departments of the city
government. The reference to ordinance No. 1633 in the
title does not affect the body of the ordinance and may be
rejected as surplusage. This being the only objection to
the city taxes of East St. Louis, the court did not err in
overruling it.

Appellant objects to the whole of the tax levy by the
East Side Levee and Sanitary District. Said district was
organized under an act of the legislature passed in 1907 and
embraces territory in both Madison and St. Clair counties.
For the year 1910 the board of trustees of said district
levied taxes as follows:

| | |
|---|---:|
| Trustees' salaries............................... | $6,000 |
| Treasury department ........................... | 1,600 |
| Clerical department ........................... | 10,300 |
| Legal department ............................. | 11,000 |
| Engineering department ....................... | 27,000 |
| For purchase of right of way for levees........ | 55,900 |
| Total amount levied for current annual expenses................................. | $111,800 |
| For payment of principal of bonds of said district dated Sept. 1, 1910, and payable Sept. 1, 1911.. | 450,000 |
| For semi-annual interest on said bonds, two items of $11,250 each............................. | 22,500 |
| Total amount appropriated for all purposes.. | $584,300 |

On the 25th of July the board of trustees passed an appropriation ordinance, by which the following appropriations were made:

| | |
|---|---:|
| For trustees' salaries | $6,000 |
| Clerical department | 10,300 |
| Treasury department | 1,600 |
| Legal department | 11,000 |
| Engineering department | 27,000 |
| Right of way | 55,900 |
| For construction of levees, drains and ditches | 450,000 |
| Total | $561,800 |

By comparing the levy with the appropriation ordinance the following differences will be noted: (a) The levy ordinance is $22,500 more than the appropriation; (b) in the appropriation ordinance $450,000 is set apart for the construction of levees, drains and ditches, while in the levy ordinance the same amount is levied for the payment of bonds; (c) in the levy ordinance there are two items of $11,250 each, levied for the payment of semi-annual interest on bonds, while there is nothing in the appropriation ordinance relating either to bonds or interest.

Appellant objects to the whole of the sanitary district tax because the appropriation ordinance was not passed during the first quarter of the fiscal year, and numerous decisions of this court are cited which hold that the statute which requires the passage of an appropriation ordinance by the city council and board of trustees of villages is mandatory. Counsel for appellant proceed on the assumption that paragraph 89 of the Cities and Villages act applies to sanitary districts. That paragraph has no application whatever to municipalities other than cities and villages. It is limited by its terms to these municipalities and does not apply to any other. There are numerous municipalities, such as school districts, road districts, townships, drainage districts, and the like, that have power to levy taxes, which do not come within the purview of paragraph 89 of the Cities and Villages act. Section 121 of the Revenue act pro-

vides that the county boards of the respective counties shall annually, at the September session, determine the amount of taxes to be raised for county purposes, and requires that the several purposes for which the levy is made shall be stated separately. This section, however, has no application to a sanitary district. There is nothing in the act of the legislature under which the sanitary district was organized that requires the board of trustees to pass an annual levy ordinance during the first quarter of the fiscal year. The only limitation in regard to the levy of taxes by the sanitary district is found in section 17 of the act under which said district was organized. That section provides that the taxes shall be levied by an ordinance specifying the purposes for which the same are required, and a certified copy of such ordinance is required to be filed with the county clerk in which said district was organized, on or before the second Tuesday in August, as provided by section 122 of the general Revenue law. It will be seen that there is no requirement as to the time when the levy ordinance is to be passed, provided it is passed in time to be filed with the county clerk before the second Tuesday in August. No point is made that the ordinance did not sufficiently specify the purposes for which the several items of taxes were levied.

Appellant also objects to the sanitary district tax because $450,000 of the levy was made to pay the principal of bonds of the district issued September 1, 1910, and payable September 1, 1911. Appellant contends that the issuing of these bonds was a mere subterfuge to avoid the provisions of the statute in relation to scaling of certain items of taxes under the law of 1909. Under that law this court held in *People* v. *Chicago and Alton Railroad Co.* 248 Ill. 417, that taxes levied by a sanitary district for general purposes were not exempt from reduction under the amended Revenue law of 1909 as "levee taxes." Section 2 of the amended Revenue act of June 14, 1909, provides

that "no reduction of any tax levy made hereunder shall diminish any amount appropriated by corporate or taxing authorities for the payment of the principal or interest on bonded debt, or levied pursuant to the mandate or judgment of any court of record. And to that end every such taxing body shall certify to the county clerk with its tax levy, the amount thereof required for any such purposes." Appellant contends that the item of $2.46 on the $100 valuation for bonded indebtedness was, in fact and in substance, a levy to pay for work on levees, ditches and drains during the current year, and that such item was subject to reduction under the Revenue law of 1909, notwithstanding it was, in form, a levy to pay bonded indebtedness of the district. The power of the sanitary district to issue bonds is not questioned up to the constitutional limit of five per cent of the assessed value of the property in the district. The district has no power to issue bonds running longer than twenty years, but it may issue bonds for any shorter period. There is nothing in the statute or in the constitution that prohibits a municipality from issuing bonds in good faith and for a proper purpose, payable in one year. This power existed in the sanitary district before the passage of the amended Revenue act in 1909. There is nothing in the Revenue act that takes away the powers of the sanitary district that existed when that act took effect. There is no evidence in this record which tends to impeach the good faith of the board of trustees of the sanitary district in issuing these one-year bonds, and in the absence of any proof to the contrary we must presume good faith in these officials. The bonds having been issued in good faith by the board of trustees for a proper corporate purpose, the mere fact that they mature in one year from date of issue is no reason why the levy made to pay them should be treated as a levy for current expenses, thereby subjecting the levy to a reduction under the amended law of 1909. It is not claimed that there was any outstanding indebted-

ness against the district at the time these bonds were issued. The board of trustees, in the exercise of their discretion, deemed it advisable to borrow money for one year and issue bonds therefor. Whether the method pursued was more advantageous to the district than to issue anticipation warrants or to contract for work to be paid for as the taxes were collected were questions to be determined by the board of trustees, and the exercise of their judgment in that regard is not the subject of review by the courts. Section 12 of article 9 of the constitution of 1870 limits the powers of municipal corporations in contracting debts to five per cent on the value of the taxable property of such corporations as ascertained by the last assessment for State and county taxes. Said section also provides that before or at the time of incurring such indebtedness such municipality shall provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due and to pay and discharge the principal thereof within twenty years from the date of contracting the same. The sanitary district made provision, by its levy ordinance of July 6, for the payment of the principal and interest on these bonds by levying a tax sufficient to pay both principal and interest as the same matured. Appellant's principal contention is that the levy to pay bonded indebtedness should be scaled under the Revenue law as amended in 1909, on the ground that the levy for bonded indebtedness was a mere shift and device to obviate a reduction under the Revenue law. This argument seems to us to prove too much. The tax complained of was levied for the purpose of paying bonded indebtedness and interest thereon. This was the purpose stated in the ordinance for which such levy was made. If such purpose is illegal, then the tax should be held void entirely, instead of holding that it is subject to be scaled. The court would have no power, in any event, to change a levy made to pay bonded indebtedness and interest to a levy for current expenses or other corporate purpose. The

court did not err in overruling this objection to the sanitary district tax.

The appellant further objects to the sanitary district tax because he says that if the county clerks in Madison and St. Clair counties, in which said sanitary district is located, performed their duties under the amended Revenue law of 1909 it will destroy the uniformity of tax rate in the two counties, and thus render section 17 of the Sanitary District act unconstitutional. If this argument has any force it should be applied to the amended Revenue law of 1909, under the operation of which the want of uniformity is brought about, rather than to the Sanitary District act of 1907, which, considered alone, is a valid constitutional act. Appellant's argument on this point is based on the assumption that Granite City had a higher aggregate rate of taxes than East St. Louis, which was taken by the county clerk as the basis for finding the rate in the district. This is a misapprehension. The total aggregate rate in Granite City, in Madison county, is $8.38 on the $100, but in this aggregate are included thirty cents State tax, seventy-seven cents school building tax and fifty-six cents road and bridge tax, which are to be excluded from the aggregate, which brings the rate down to $6.75 to which the scaling process should be applied. The total aggregate in East St. Louis is $8.10, but it is reduced, by excluding the State tax, the school building tax of forty-five cents and sixteen cents illegal tax, to $7.19 as the total rate to which the scaling must be applied. Appellant's argument on this point being based on an erroneous assumption as to the facts, is without force.

The judgment of the county court is reversed in part and the cause remanded, with directions to enter a judgment in accordance with the views herein expressed.

*Reversed in part and remanded.*