(No. 20986.—

Carl Siegel, Plaintiff in Error, *vs.* The City of Belleville *et al.* Defendants in Error.

*Opinion filed June 24, 1932.*

JAMES A. FARMER, and LOUIS KLINGEL, for plaintiff in error.

LOUIS J. GROSSMANN, City Attorney, for defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Carl Siegel, on behalf of himself and other tax-payers of the city of Belleville, filed a bill in the circuit court of St. Clair county to restrain the city, its mayor, clerk and treasurer from expending public money in the purchase of certain fire apparatus. A joint and several demurrer to the bill was overruled, the defendants elected to abide by their demurrer, and an injunction, in accordance with the prayer of the bill, was granted. The defendants prosecuted an appeal to the Appellate Court for the Fourth District, and that court reversed the decree and remanded the cause to the circuit court with directions to sustain the demurrer and to dismiss the bill for the want of equity. The cause is brought to this court upon a writ of *certiorari* granted on the application of the complainant.

The city of Belleville in St. Clair county is a municipal corporation organized under the general Cities and Villages act. The city is divided into seven wards, and fourteen aldermen are therefore elected to the city council. The

fiscal year of the city begins on the first day of May. The appropriations for the year beginning on May 1, 1930, relating to the fire department were the following: "Fire department, $34,000; fire department, two mill tax, $36,000; fire department, foreign fire insurance, $13,500." On October 20, 1930, the council had under consideration the report of a committee concerning the proposed purchase of a fire or pumping engine. The committee stated that it had received six proposals, one to furnish such an engine for $11,985, another for $12,200, and each of the remaining four asked $13,000, and the purchase of the engine offered by the American-LaFrance and Foamite Industries, Inc., one of the bidders, at $13,000 was recommended. An alderman moved concurrence in the report of the committee and a roll call upon the motion showed seven ayes and seven nays. The result being a tie, the mayor voted in the affirmative and declared the motion carried. On the same day, the mayor and the city clerk, acting on behalf of the city, executed a contract in accordance with the committee's recommendation and the council's action thereon.

The plaintiff in error contends that the contract for the purchase of the fire or pumping engine is void for two reasons. In the order of their statement, these reasons are, first, that the concurrence of an actual majority of all the aldermen elected to the city council is necessary to the passage of an ordinance creating a liability against the city or authorizing the expenditure of its money and, consequently, that the mayor is not empowered to vote upon the passage of such an ordinance even if the yeas and nays of the aldermen result in a tie; and second, that the appropriations relating to the fire department are void because the city council neither specified the objects and purposes for which the appropriations were made, nor the amount appropriated for each object and purpose. The circuit court sustained both contentions and declared the contract for the purchase of the engine void.

The answer to the first question requires a review of certain statutory provisions. Section 1 of article 3 of the act for the incorporation of cities and villages provides that the city council shall consist of the mayor and aldermen; section 8, that a majority of the aldermen elect shall constitute a quorum to do business, and section 13, that "The yeas and nays shall be taken upon the passage of all ordinances, and on all propositions to create any liability against the city, or for the expenditure or appropriation of its money, and in all other cases at the request of any member, which shall be entered on the journal of its proceedings; and the concurrence of a majority of all the members elected in the city council shall be necessary to the passage of any such ordinance or proposition: Provided, it shall require two-thirds of all the aldermen elect to sell any city or school property." Section 1 of article 2 of the same act provides that the chief executive officer of a city shall be the mayor, and section 6, that the mayor shall preside at all meetings of the city council, but shall not vote, except in case of a tie, when he shall give the casting vote. Cahill's Stat. 1931, pp. 332, 333, 334; Smith's Stat. 1931, pp. 337, 338, 340.

The foregoing statutory provisions, obviously, must be construed together and not separately. The city council consists of the mayor and aldermen; the mayor presides at all meetings of the council, but has no vote except in the case of a tie, when he shall cast the deciding vote. The mayor is therefore a part or member of the council, although his powers and duties differ from those of an alderman. The passage of an ordinance or the adoption of a proposition to create any liability against the city or to expend or appropriate its money requires the concurrence, by yeas and nays, entered on the journal, "of a majority of all the members elected in the city council." The concurrence of a majority required by section 13 of article 3 is, however, not of all the aldermen elected to, but of all the members elected in, the city council. When the legislature in-

tended to speak only of aldermen, and not all the members of the city council, it spoke definitely and with discrimination. By section 8 of article 3 it provided that a majority of the aldermen elect shall constitute a quorum to do business; and by the proviso to section 13 of the same article that it shall require two-thirds of all the aldermen elect to sell any city or school property. It is evident that the phrase "members elected in the city council" in section 13 of article 3 includes both the mayor and the aldermen and that, in case of a tie, all the aldermen elected to the city council voting, and the mayor casting his vote in the affirmative, the ayes of one-half of the aldermen together with the mayor's vote constitute the majority requisite to compliance with that section. If the contention of the plaintiff in error is sound, no ordinance can be passed by a city council when every alderman that may be elected to that body is present and votes and the yeas and nays of the aldermen are equal in number. Such a contention excludes the mayor from membership in the city council, notwithstanding the provision of section 1 of article 3 to the contrary; it incorporates in section 13 of the same article a limitation which that section does not contain, and it contravenes the provision of section 6 of article 2, that in case of a tie, the mayor shall give the casting vote. Neither statutory provision nor sound reason appears to support the claim that the mayor's right to vote, in the event of a tie, may be exercised only upon measures and propositions not within the provisions of section 13 of article 3 of the Cities and Villages act. The motion to purchase the fire or pumping engine was therefore legally carried.

Statutory enactments must also be considered in answering the second question. Section 2 of article 7 of the Cities and Villages act (Cahill's Stat. 1931, p. 345; Smith's Stat. 1931, p. 361), provides that the city council shall within the first quarter of each fiscal year, pass an ordinance termed the annual appropriation bill, in which the corporate authori-

ties may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of the corporation, and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object and purpose. Similar requirements are contained in section 121 of the Revenue act relating to taxes for county purposes (Cahill's Stat. 1931, p. 2333; Smith's Stat. 1931, p. 2394), and in section 1 of article 8 of the Cities and Villages act concerning tax levies for city purposes. Cahill's Stat. 1931, p. 350; Smith's Stat. 1931, p. 366.

The object of the foregoing statutory requirements is to enable the tax-payer to compel the application of public funds to the purposes for which they were appropriated; to prevent the application of such funds to other purposes and to prevent the raising or expenditure of greater sums of money than are necessary for legitimate corporate purposes. (*People* v. *Chicago and Eastern Illinois Railway Co.* *326* Ill. 354; *People* v. *Eastern Illinois and Missouri Railroad Co.* 335 id. 245). The necessity of these requirements and the duty of observing them are exemplified by section 208 of the first division of the Criminal Code (Cahill's Stat. 1931, p. 1052; Smith's Stat. 1931, p. 1056), which provides that every person holding any public office, whether State, county or municipal, who shall be guilty of diverting any public money from the use or purpose for which it may have been appropriated, or who shall be guilty of contracting, directly or indirectly, for the expenditure of a greater sum of money than may have been set apart for the subject matter of the contract, shall be fined not exceeding $10,000 and may be removed from office.

It is not necessary to specify every item which the city may expect to pay out of a particular appropriation. A single general purpose is sufficient to include every appropriate expenditure although there may be many items (*People* v. *Eastern Illinois and Missouri Railroad Co.* 335 Ill.

245; *People* v. *Irvin,* 325 id. 497). If, however, a particular appropriation is not sufficiently definite to disclose to the tax-payer the purpose for which the money is to be expended, the appropriation fails to comply with the requirements of the provisions of the Cities and Villages act and the Revenue act to which reference has been made, and it is therefore void. *People* v. *Chicago and Eastern Illinois Railway Co.* 326 Ill. 354; *People* v. *Chicago and Alton Railway Co.* 289 id. 282; *People* v. *Arnold Bros.* 282 id. 305; *People* v. *Klee,* 282 id. 440; *People* v. *Ross,* 272 id. 63; *People* v. *Cairo, Vincennes and Chicago Railway Co.* 266 id. 557; *People* v. *Vogt,* 262 id. 170; *People* v. *Bowman,* 253 id. 234; *People* v. *Cairo, Vincennes and Chicago Railway Co.* 237 id. 312; *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 231 id. 209.

The tax-payer's right to have separately stated the purpose for which public money is appropriated or a tax is levied is a substantial right of which he may not be deprived (*People* v. *Missouri Pacific Railroad Co.* 332 Ill. 53). Of the many cases in which the right has been asserted and sustained, a reference to a few will be sufficient. In *People* v. *Cairo, Vincennes and Chicago Railway Co.* 237 Ill. 312, the item in a county tax levy for "supplies and repairs for poor farm and salary of warden, $2000," it was declared, should be separated. Again in *People* v. *Bowman,* 253 Ill. 234, items in a county tax levy "for county farm, $25,000," "for county jail, $15,000," "for workhouse, $1200," and "for court house, $35,000," were held not sufficiently definite to satisfy the statute, because they failed to disclose whether the money was levied to purchase grounds and buildings, to improve buildings, or to defray the general operating expenses of the several county institutions. Likewise, in *People* v. *Ross,* 272 Ill. 63, it was decided that the amounts required by a village for fuel and light should be stated separately and not in a lump sum; and recently, in *People* v. *Chicago and Eastern Illinois Railway Co.* 326

Ill. 354, a county tax levy "for fuel, light, and water, $2000," was adjudged not sufficiently itemized to show the purpose of the levy. This court, in its opinion in the last case said: "There is nothing in the tax levy resolution to show the purpose for which this item was levied. While the collector contends that it was for use in the court house and jail, for aught that appears in this record the fuel might have been intended for paupers, the light for lighting a public park, and the water for an irrigation system on the county farm, or for any one of an indefinite number of purposes. The objection of defendant in error was properly sustained to this tax."

The appropriations to which the plaintiff in error objects consist of three items: "Fire department, $34,000; fire department, two mill tax, $36,000; fire department, foreign fire insurance, $13,500." The city of Belleville was authorized to levy annually, for fire protection, a tax not exceeding two mills (Cahill's Stat. 1931, p. 615; Smith's Stat. 1931, p. 533), and to collect, for the maintenance, use and benefit of the fire department, two per cent. of the gross receipts of the agencies of foreign fire insurance companies within the city (Cahill's Stat. 1931, p. 619; Smith's Stat. 1931, p. 485). No city would appropriate money to be expended for a two mill tax and a small city would hardly set apart $13,500 for foreign fire insurance in a single year. Manifestly, the last two items of the appropriations for the fire department indicate the sources from which the money is expected and not the objects and purposes for which it will be expended. The result is that the sum of the three items, $83,500, is appropriated for the fire department, but no further information is given. By such a practice, if approved, the mere enumeration of the several departments of the city government and the sum of money set apart for each, would constitute an appropriation bill. Under such a rule it would be a matter of no consequence whether the department was large or small, whether it had one or many

functions, and whether expenditures were to be made for permanent additions and improvements or merely for current operating expenses. The range of expenditure permitted by such a practice would afford the tax-payer neither information nor protection and would lead to abuses which the legislature sought to prevent by the enactment of section 2 of article 7 of the Cities and Villages act.

The mere statement that a given sum of money is appropriated for a certain department of the city is not a specification of the objects and purposes for which the money is appropriated. Wages and salaries, other recurring charges, the acquisition of land, the erection of a fire station and the purchase of fire apparatus, all, among others, requiring expenditures within or for a fire department, are plainly not the same objects and purposes. The appropriation under review gives no intimation that the purchase of a fire engine was contemplated. Such a purchase, especially in a small city, is not an ordinary current expense, and a tax-payer could not learn from the appropriation bill, and certainly was not bound to assume, that $13,000, or any other substantial sum, would be expended for that purpose. Without the specification of the objects and purposes for which the appropriations were made and the amount appropriated for each object and purpose, as required by section 2 of article 7 of the Cities and Villages act, the appropriation in question is void.

The judgment of the Appellate Court is reversed and the decree of the circuit court is modified to the extent that the injunction ordered shall be based solely upon the ground that the appropriation made by the city council of the city of Belleville for the fiscal year beginning May 1, 1930, does not authorize or justify the purchase of a fire engine or apparatus, and as so modified, that decree is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court modified and affirmed.*