CLEVELAND v. SPENCER et al.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1896.)

No. 128.

1. TAXATION OF RAILROADS—LEASE OF ROAD—LIABILITY OF LESSEE.

The acquisition by one railroad company of the control and operation of the road and property of another under a lease, after the expiration of seven months of the current fiscal year, and after an assessment and levy, which subjects such property to a lien for taxes from the beginning of such fiscal year, does not of itself render the former company primarily liable, as a debtor of the state, for the amount of such tax.

2. SAME—CONSTRUCTION OF LEASE.

A covenant by the lessee in a railroad lease that it "will pay, as operating expenses, all taxes and assessments * * * which may be lawfully levied or assessed" upon the demised property, is not an assumption of liability for taxes already assessed and levied, and constituting a lien from the beginning of the fiscal year in which the lease is made.

3. SAME—IMPLIED CONTRACT.

If there is any contract implied by law whereby one railroad company, acquiring the control of the property, income, etc., of another, becomes directly liable for taxes already due, and constituting a lien thereon, for the fiscal year then current, such liability is only in proportion to the part of the fiscal year remaining after assumption of such control.

4. JUDGMENT—ESTOPPEL.

The estoppel arising from the results of litigation does not apply in a subsequent suit in which some of the parties are different.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This was a bill by the Richmond & Danville Railroad Company against J. R. Blake, W. D. Mann, and others, county treasurers, for an injunction restraining the collection of a certain tax alleged to have been based upon an unlawful assessment. There was a decree for complainant. 49 Fed. 905. Subsequently the complainant was ordered to pay the balance of the taxes due on certain lines of road leased or otherwise controlled in the state of South Carolina, not including the Port Royal & Western Carolina and another road, which by admission had passed beyond the control of the complainant. Samuel Spencer and others having been appointed receivers of the complainant, the Richmond & Danville Railroad Company, June 15, 1892, the cause came up on the petitions of the receiver of the Port Royal & Western Carolina Railway Company and another, praying that the receivers of the Richmond & Danville Railroad Company be directed to pay the remainder of the taxes due for the fiscal

year ending October 31, 1891. The prayer of the petition was dismissed September 14, 1894, by the circuit court, the following opinion having been filed (Simonton, Circuit Judge):

This case now comes up upon the petitions above stated. The receiver of the Port Royal & Western Carolina Railway prays that the receivers of the Richmond & Danville Railroad Company be directed to pay an unpaid remainder of taxes due on that railway for the fiscal year 1890–91. The Asheville & Spartanburg Railway Company prays that the same receivers pay the taxes on the property of the petitioner's railroad which accrued during the control over it of the said receivers. There is perhaps an irregularity in joining these claims in one petition; but as it is preferred in a suit pending in this court which the receivers have taken under their charge, for the sake of convenience the irregularity, if any exists, is overlooked. The claims do not proceed upon precisely the same grounds, and they will be considered separately.

### The Port Royal & Western Carolina.

This corporation was created under the laws of the state of South Carolina. It was subsequently recognized and incorporated under the laws of the state of Georgia. The Central Railroad & Banking Company, a corporation of the last-named state, was very much interested in its incorporation and construction, and became the owner of nearly all its bonds and of a great portion of its stock. The bonds had a voting power, and by reason of this, without, as far as it appears, any lease or contract, the Central controlled the Port Royal & Western Carolina. So complete was this control that the Central selected its board of directors, practically appointed its agents, fixed its rates, and managed its business. The Port Royal & Western Carolina became to all intents and purposes an integral part of the system of the Central, was dominated by it, was treated as one of its divisions; and, when the Central Railroad & Banking Company was placed by the circuit court of the United States for the Southern district of Georgia in the hands of a receiver, that receiver was made receiver of the Port Royal & Western Carolina as a part of the Central. In 1891 (June 1st), the Central Railroad & Banking Company of Georgia executed to the Georgia Pacific Railway Company a lease of its whole system, drawing with it this Port Royal & Western Carolina Railway. The lease lets all the roads and property owned by the Central, assigns all the leases of railroads and other property held under lease by the Central, and puts within the control of the lessee all the stocks and bonds, whereby control of connecting lines had been obtained by and was held by the Central. In this last class was the Port Royal & Western Carolina by name. The twentieth article of this lease, the one bearing on the question under consideration, is as follows: "Article Twentieth. The said Pacific Company, for itself, its successors and assigns, further covenants and agrees to pay and discharge all expenses, costs, damages, and claims, and demands whatsoever which shall or may arise out of the management and operation of said railroads and other property hereby demised, or any part thereof, and will and shall at all times save and keep harmless and indemnify the said Central Company therefrom, and will defend, at its own expense, all such actions and suits which shall or may be brought against the said Central Company, and will pay, as operating expenses, all taxes and assessments, ordinary or extraordinary, of whatsoever kind and nature, which may be lawfully levied or assessed upon the property hereby demised, including said leased lines, or any of them, or against the said Central Company because of its interest therein." The Georgia Pacific Company, the lessee, was a part of the great system of the Richmond & Danville Railroad Company. In what way this lease, or the privilege created by it, came into the hands of the Richmond & Danville Railroad Company, whether by express contract or not, does not appear. It may well be concluded that, the Georgia Pacific being under the domination and control of the Richmond & Danville, this latter company also took control of the Central, with all its owned, leased, and controlled lines. This being so, the Richmond & Danville assumed, with all the privileges of this control, its responsibility also, and these responsibilities are measured by this lease. On 4th March, 1892, this lease was surrendered and canceled, and the Central, with its entire system, was placed in the

charge of receivers appointed by the circuit court of the United States for the Southern district of Georgia. On 7th March, 1892, the Richmond & Danville Railroad Company filed its bill against J. R. Blake et al., the main cause in which this petition is brought. This bill sought relief against what was alleged to be illegal assessment of railroad property in its hands and under its control, liable to taxation. It sought an injunction against the levy for the tax under this assessment. Having been required to pay so much of said tax as was admitted to be lawfully due, a temporary injunction was issued as to the alleged illegal assessment. See 49 Fed. 905. Among the properties whose taxes were involved in this issue and set out with the bill was the Port Royal & Western Carolina Railway. The amount of taxes on this road in dispute, and not paid, was $———; this being a part of the tax for the fiscal year 1890-91. Pending this suit, to wit, on the 15th June, 1892, a suit was instituted in the circuit court of the United States for the Eastern district of Virginia, by Clyde and others, stockholders and creditors, against the Richmond & Danville Railroad Company. Under this suit, Ruben Foster and F. W. Huidekoper were appointed receivers of the Richmond & Danville system. By auxiliary proceedings in this court, this appointment was recognized and affirmed. These receivers, finding the suit against Blake and others pending, took charge of the litigation, and represented so much of the property as was in their charge. Before argument on the merits of the case, and before testimony was taken thereon, the counsel representing these receivers called the attention of the court to the cancellation of the lease of the Central Railroad system, and thereafter disclaimed any authority to represent any part of that system in that case. After full testimony and argument, the suit against Blake and others was dismissed, and the injunction dissolved. The Richmond & Danville Railroad was a vast system, embracing many lines of railroad, some owned, others leased, and some only controlled. All of these roads were held by the Richmond & Danville, subject to their several mortgages, a first lien on them severally. And there was also a mortgage, perhaps more than one, on the entire system.

There are two questions involved in this issue. First. Is the Richmond & Danville Railroad Company liable for this amount of tax unpaid for the fiscal year 1890-91? Second. Are these receivers, as receivers, responsible therefor? That is to say, if it shall appear that this is a debt due by the Richmond & Danville Railroad Company, is it within that class of debts which take priority in the disbursement of funds derived by the receivers from the entire system? And, if so, how can this priority be secured?

Is this a debt of the Richmond & Danville Railroad Company? The sum claimed is a part of the tax levied for the fiscal year 1890-91. Its lien attached at the beginning of the fiscal year, November 1, 1890. Gen. St. S. C. § 170; Pub. Laws, § 217. The return under which it was levied was required by law to be made between 1st January and 20th February, 1891 (Gen. St. S. C. § 180: Pub. Laws, § 231), and by the president and secretary of the company (Id.). The assessment complained of was made 19th May, 1891. The lease of the Central and its system to the Georgia Pacific was executed 1st June, 1891. Then only did any rights and corresponding responsibilities of the Richmond & Danville begin. Manifestly, from these dates the tax was not primarily a debt of the Richmond & Danville. Nor could any return of the property have lawfully been made by this company, for it had no interest or control whatever over it when the law required its return, and when the assessment was made. When the lien was about to be enforced (February, 1892), the property was perhaps in the qualified ownership—certainly under the control—of the Richmond & Danville. It had come into its hands subject to the paramount lien of the tax. The enforcement of the tax would disturb its possession and its rights. Therefore, very properly, it tested the legality of the assessment.

The tax thus not being primarily the debt of the Richmond & Danville Railroad Company, did that company assume its payment? This it may have done either under an express contract, the lease, or under an implied contract arising from its operation of the road, controlling it, and receiving its entire income, enjoying all its incidental advantages. For the purposes of this case, we assume that the Richmond & Danville Railroad Company was to all intents and purposes the lessee of the Central and its system, bound by the terms of the

lease. Without dwelling upon the language of the lease, which provides for the payment of taxes on the property thereby demised, including leased lines, or any of them, or against the Central Company, because of its interest therein; that is to say, property demised, including leased lines, or taxes charged against the Central Company, because of its interest therein, and so perhaps excluding all other property, such as property in which, as in the present case, the Central Railroad Company was only interested as a stockholder in the company owning it,—it will be noted that this article is in the future tense. It does not provide for past obligations, only for future liabilities. It does not assume a debt already incurred, nor a tax already fixed. The tax in question practically took effect from the first day of the fiscal year. When the property got within the control of the Richmond & Danville, it was already burdened with the tax, a tax chargeable against the property, and a debt of the person owning it when it should have been returned. Gen. St. S. C. §§ 216, 217.

This tax, therefore, not being a debt primarily of the Richmond & Danville Railroad Company, nor one assumed by it by express contract, is it liable for the tax by contract implied by law, arising from its possession and control of the property, its receipt of the income, and its enjoyment of all advantages incident thereto? The tax in question was for the whole fiscal year 1890–91, from November 1, 1890, to October 31, 1891. The Richmond & Danville Railroad Company, at the earliest, took possession of it 1st June, 1891, after seven months of the fiscal year had elapsed, and held it for the remaining five months. It has already, under the orders of this court, paid 67 per cent. of the entire tax for the whole fiscal year, more than its proportion, admitting the full force of this implied contract. This prayer of the petition is dismissed.

### The Asheville & Spartanburg Railroad Company.

In the absence of any evidence of the terms under which the Richmond & Danville Railroad Company got control of this road, it is impossible to decide upon its liability. Let so much of the petition as relates to this matter be referred to a special master, or, if counsel agree, be submitted on a statement of facts.

John B. Cleveland, receiver of the Port Royal & Western Carolina Railway Company, prosecutes this appeal.

S. J. Simpson, for appellant.

George G. Wells, of Cothran, Wells, Ansel & Cothran, for appellees.

Before HUGHES and SEYMOUR, District Judges.

HUGHES, District Judge. This court fully concurs in the decision of the circuit court in this case, and agrees with the reasons assigned in the opinion of the court for its decision. The only question raised on appeal not embraced in the opinion of the circuit court is that of estoppel. But the parties in the suit which was before the circuit court, and which it decided, were not the same as those in the previous suit, and estoppel does not apply. Decree or order of the circuit court affirmed, with costs.