THE PEOPLE *ex rel.* William L. O'Connell, County Collector, Appellee, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed December 16, 1914.*

1. TAXES—*Cook county commissioners have no power to levy tax for loss and cost in tax collection.* The board of commissioners of Cook county has no power to levy a tax to cover the cost and loss due to the operation of the tax extension laws.

2. SAME—*the county clerk in extending taxes cannot disregard item levied by county commissioners.* An item of over three million dollars appropriated by the Cook county commissioners for "loss and cost in tax collection rebate general tax fund," and levied as "rebate general tax fund—amount appropriated for loss occa-

sioned by operation of the tax extension laws," cannot be justified on the ground that it was not intended as a tax levy but only as an item to be used as a balance weight in the scaling process, as the county clerk, in extending the taxes, is a mere ministerial officer, and could not disregard any item levied by the board or treat it other than as an item duly appropriated and levied for the purpose designated.

3. SAME—*the county clerk in scaling taxes cannot take whole excess from any one item.* The county clerk, in scaling taxes to reduce the total levy of the county so as to bring it within the maximum of seventy-five cents, has no authority to take the whole of the excess from any one item, even though the item is levied as an amount appropriated for loss occasioned by operation of the tax extension laws.

4. SAME—*statute requiring Cook county commissioners to pass appropriation bill within first quarter of fiscal year is mandatory.* The statute requiring the board of commissioners of Cook county to pass its appropriation bill within the first quarter of the fiscal year is mandatory, and while the board has power, within a reasonable time after the expiration of such quarter, to reconsider the vote as to items vetoed by the president of the board, near the expiration of the quarter, such power is limited to reconsidering the vote by which the vetoed items were originally passed, and does not include power to add new items or increase the amounts of vetoed ones, or substitute other items for the ones vetoed.

APPEAL from the County Court of Cook county; the Hon. JOHN E. OWENS, Judge, presiding.

BRUNDAGE, LANDON & HOLT, and J. N. WHEATLEY, (ROBERT N. HOLT, of counsel,) for appellant.

MACLAY HOYNE, State's Attorney, HAYDEN N. BELL, HENRY A. BERGER, PATRICK J. MURPHY, and IRWIN N. WALKER, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county against the lands of appellant for delinquent taxes. Three objections interposed by appellant to the application of the county collector for judgment and order of sale were overruled. In the view we have taken

it will be necessary for us to consider but two of these objections.

In passing the annual appropriation bill for the year 1913 the board of commissioners of Cook county included an item which it designated, "Loss and cost in tax collection rebate general tax fund," and appropriated $3,241,-223.42 for that item. This amount was thereafter included in the tax levy made by the board under the designation, "Rebate general tax fund—Amount appropriated for loss occasioned by operation of the tax extension laws," and it is objected that this appropriation and levy were illegal. Appellee does not point out in its argument wherein the board of commissioners has been given authority to appropriate money and make a tax levy for any such purpose as that designated. It defends the action of the board only upon the theory that this item was not included in either the appropriation bill or the tax levy as an item of appropriation, its contention being that it was inserted merely as a balance weight, to be used only in the scaling process, and was not treated as an item of appropriation by the county clerk or by the collector. Appellee fails to point out, however, where the board is given authority to insert an item in its appropriation bill, and thereafter make a levy for the same item, for the purpose of using it merely as a balance weight, so called, in the scaling of the various taxes levied which under the statute are subject to be scaled. We are unable to find any authority for such procedure. This item appears in the appropriation bill and in the tax levy as an item appropriated and levied. The board of commissioners is the only body having the power to make appropriations for the corporate purposes of Cook county and make a levy based thereon. The various officers who have to do with the extension of the taxes as levied, and the collection of the same, have no right or authority to disregard any of the items levied or to change or juggle with them. The functions of the county clerk in extend-

ing taxes levied by the county commissioners are purely ministerial, and he is given no right by the statutes to disregard any item which has been levied by the board of commissioners, or to treat it other than as an item duly appropriated and levied for the specific purpose designated in the resolution of the board making the levy.

It is urged by appellee that appellant was not injured by the inclusion of this item in the tax levy because its taxes were not thereby increased, and that therefore the objection to the same was properly overruled. This argument is based upon the theory that whether this item had been included in the tax levy or not, the rate of taxation for county purposes would have been the same. This conclusion is supported by pointing out that under the statute, considering the conditions existing with this item included, it was necessary to scale the county taxes for general purposes to the minimum,—forty cents on each $100 valuation; that with the item excluded the county taxes levied for general purposes still represented forty-six cents on each $100 valuation, and that it would still have been necessary, under the statute, to scale the same to forty cents. The effect of this argument is merely to say that even had this illegal tax been omitted there was still sufficient levied in a legal manner to have required appellant to pay the same amount of tax. This constitutes no defense to the action of the county commissioners in making an illegal levy, nor does it meet the fact that the amount thus illegally levied necessarily constitutes a part of the taxes for which judgment and order of sale are asked in this proceeding.

The clerk in charge of the tax extension work in the county clerk's office testified that in scaling the taxes levied for the year 1913 the item of $3,241,223.42 was not used to the full amount; that in order to bring the tax levy for county purposes within the minimum of seventy-five cents on each $100 valuation allowed by law it was necessary to reduce the rate twelve cents on each $100 valuation, and

that this reduction was made wholly in the item of $3,241,-223.42, so that whereas it originally represented thirty-one cents on each $100 valuation, as used in the scaling process it represented but nineteen cents. Where the county clerk obtained authority, in reducing the total tax levy of the county to bring it within the maximum of seventy-five cents, to take the whole of the excess from any one item of the tax levied has not been pointed out and does not occur to us.

The record further discloses that this item has appeared in each appropriation bill and in each tax levy of the county, for the past seven years, and that during that time there has never been any account kept of this item, or of any fund arising from it, in the treasurer's office, but that all the money received from taxes has been distributed among the other funds. The mere fact that the officers into whose hands the money derived from taxation comes have seen fit to distribute the money secured by means of this item among other funds for which levies were made does not tend to make the action of the board of commissioners in levying a tax for this item legal, nor does it deprive appellant of its right to object to the collection of a tax thus wrongfully levied. This item of the tax levy necessarily entered into the amount of taxes which were assessed against the appellant, and it has the right to have deducted from the total amount of taxes assessed against it the proportion of its tax which is represented by this item in the tax levy. The objection to this tax should have been sustained.

It is next objected that the board of commissioners did not pass an appropriation bill within the first quarter of the fiscal year for a part of the items contained in the tax levy resolution. By the provisions of the statute the fiscal year of Cook county begins on the first Monday of December of each year. The annual appropriation bill for the year 1913 was passed on February 21, 1913. It included a great many items. The president of the board, on February 26,

1913, returned the appropriation bill to the county board with his written objections to and veto of items of the appropriation bill aggregating $2,049,526.58. The items vetoed consisted of salaries and wages of officers and employees of the various departments of the county, and of appropriations to Oak Forest institutions, county hospital, county agent indigent poor relief fund, and home for delinquent and dependent children, under the heading, "General supplies," and the following items: Superintendent of public service store-room fund, industrial school fund, president's fund, roads and bridges fund, mason inspector on new county hospital and other county buildings, parents' pension fund, building, new construction and betterments fund, and miscellaneous fund. As to each item vetoed, the purpose of the appropriation and the amount appropriated were designated in the veto message by the same term used in the appropriation bill. For example, of the salaries and wages appropriated for the office of the county treasurer the president of the board vetoed the following items:

| | Per Mo. | Per Year. |
|---|---|---|
| 1 assistant treasurer | $333.33 | $4,000.00 |
| 1 principal clerk | 250.00 | 3,000.00 |
| 1 principal inheritance tax clerk, 3 months. | 208.33 | 624.99 |
| 2 principal clerks | 200.00 | 4,800.00 |
| 3 principal book-keepers | 166.66 | 6,000.00 |
| 1 senior clerk | 140.00 | 1,680.00 |
| 4 junior clerks | 140.00 | 6,720.00 |
| 3 junior clerks | 137.50 | 4,950.00 |
| 3 junior clerks | 137.50 | 4,950.00 |
| 3 junior clerks | 125.00 | 4,500.00 |
| 1 senior clerk | 125.00 | 1,500.00 |
| 1 junior stenographer | 100.00 | 1,200.00 |
| 6 junior clerks | 90.00 | 6,480.00 |
| 2 senior messengers | 90.00 | 2,160.00 |
| 1 junior clerk | 90.00 | 1,080.00 |
| 4 junior clerks | 90.00 | 4,320.00 |
| 6 senior clerks | 150.00 | 10,800.00 |
| 6 junior clerks | 150.00 | 10,800.00 |
| 1 senior book-keeper | 150.00 | 1,800.00 |
| 2 junior clerks, 9 months each | 120.00 | 2,160.00 |
| 21 junior clerks | 120.00 | 30,240.00 |

And in the office of the clerk of the probate court he disapproved and vetoed the following items:

|  | Per Mo. | Per Year. |
|---|---|---|
| 1 chief clerk, 9 months | $300.00 | $2,700.00 |
| 2 clerks, 9 months | 166.66 | 2,999.88 |
| 1 clerk, 9 months | 200.00 | 1,800.00 |
| 3 minute clerks, each 9 months | 125.00 | 3,375.00 |
| 6 record writers, each 9 months | 150.00 | 8,100.00 |
| 4 clerks, each 9 months | 150.00 | 5,400.00 |
| 12 clerks, each 9 months | 125.00 | 13,500.00 |
| 18 clerks, each 9 months | 100.00 | 16,200.00 |
| 2 stenographers and typists, each 9 months. | 100.00 | 1,800.00 |

Section 61 of the act in relation to counties prescribes the powers and duties of the board of commissioners of Cook county. By that section it is provided that the board of commissioners shall, within the first quarter of each fiscal year, adopt a resolution to be termed the annual appropriation bill, in and by which resolution it shall appropriate such sums of money as may be necessary to defray all necessary expenses and liabilities of said Cook county to be paid or incurred during and until the time of the adoption of the next annual appropriation bill. That section also provides that a veto by the president may extend to any one or more items or appropriations contained in any resolution making an appropriation, or that it may extend to the entire resolution; that upon the return of any such resolution or motion by the president, with his objections thereto, within five days, the vote by which the same was passed shall be reconsidered by the board of commissioners as to so much thereof as may have been vetoed, and if, after such reconsideration, four-fifths of all the members elected to the board shall agree to pass the same by yeas and nays to be entered on the journal, the same shall take effect notwithstanding the veto of the president. After the appropriation bill had been returned by the president of the board, together with his message in writing wherein he vetoed certain specific items thereof, and on the same day, a motion was adopted "that the board do now proceed with

the consideration of items vetoed." Neither then nor at any time thereafter was the vote by which the appropriation bill had been originally passed reconsidered as to such part of the same as was vetoed.

By section 61 it is further provided that the salaries or rate of compensation of all officers and employees of Cook county, when not otherwise provided by law, shall be fixed by the board of commissioners prior to the adoption of the annual appropriation bill and shall not be changed during the year for which the appropriation is made. The appropriations for salaries and wages which were vetoed by the president of the board were all for officers and employees whose salaries or rate of compensation were fixed by the board of commissioners under said section 61. Upon the receipt of the president's veto and the adoption of the motion above noted the board then proceeded to attempt to revise salaries and rate of compensation for the officers and employees affected by the veto of the president of the board. Consideration of these matters, together with other business, occupied the time of the board at its session during the remainder of the month of February. In some instances the salaries and rate of compensation for the various positions involved were changed and in other instances the attempt to make the change failed. No attempt was made during this time to reconsider the vote by which any item of the appropriation bill was passed, and no attempt was made to make any new appropriation until the meeting of February 28, when a resolution to appropriate sums for general supplies for the Oak Forest institutions, the Cook county hospital, the county agent indigent poor relief fund and the home for delinquent and dependent children failed of passage. The board met frequently from that date until March 22. During that time the salaries and rate of compensation for various officers and employees in the several departments of the county were changed. Attempts were made at several times to secure the adoption of a

resolution for the appropriation of money for payment of the salaries and wages of officers and employees of some one or another of the various departments of the county. During all this time the members of the board seemed to be hopelessly divided on the questions involved. On March 22 three resolutions were adopted making appropriations to take the place of the items and sums in the annual appropriation bill theretofore disapproved and vetoed. The first resolution provided for appropriations for the payment of the salaries and wages of the officers and employees of various departments. That resolution was as follows:

"*Resolved,* that the following sums be and hereby are appropriated for the several purposes and objects as hereinafter specified, to defray necessary expenses and liabilities of the county of Cook for the current fiscal year commencing on the first Monday of December, 1912, in place of items and sums in the annual appropriation bill heretofore disapproved and vetoed."

Then follow the items for which appropriation was made. The second resolution was as follows:

"*Resolved,* that the following sum be and is hereby appropriated for the salary or compensation of one junior stenographer in the office of the juvenile court probation office for three months at $83.33, $250."

This item was not contained in the annual appropriation bill and was therefore not among those vetoed. The third resolution was as follows:

"*Resolved,* that for the fiscal year commencing on the first Monday of December, A. D. 1912, there be and are hereby appropriated the following sums in place of items heretofore vetoed."

Then follow appropriations for various charitable institutions, roads and bridges fund, president's fund, etc. Under the first resolution it is apparent that the board of commissioners were attempting to make appropriations for salaries and wages of officers and employees in lieu of similar items theretofore vetoed by the president. Under this resolution the following appropriations were made for the office of county treasurer:

|  |  | Per Mo. | Per Year. |
|---|---|---|---|
| 1 | assistant treasurer | $250.00 | $3,000.00 |
| 1 | principal clerk | 300.00 | 3,600.00 |
| 3 | principal book-keepers | 150.00 | 5,400.00 |
| 1 | principal clerk | 225.00 | 2,700.00 |
| 1 | principal clerk | 175.00 | 2,100.00 |
| 3 | junior clerks, each | 70.00 | 2,520.00 |
| 3 | junior clerks, each | 90.00 | 3,240.00 |
| 5 | junior clerks, each | 83.33 | 5,000.00 |
| 22 | senior clerks | 120.00 | 31,680.00 |
| 1 | senior stenographer | 100.00 | 1,200.00 |
| 1 | junior clerk | 65.00 | 780.00 |
| 2 | senior messengers | 60.00 | 1,440.00 |
| 12 | senior clerks | 150.00 | 21,600.00 |
| 5 | senior clerks, each | 140.00 | 8,400.00 |
| 2 | senior clerks, each | 137.50 | 3,300.00 |
| 6 | senior clerks | 125.00 | 9,000.00 |

For the office of the clerk of the probate court the following appropriations were also made under this resolution:

|  | Per Mo. | Per Year. |
|---|---|---|
| 1 chief clerk office of clerk of probate court (9 months) | $250.00 | $2,250.00 |
| 1 senior stenographer to be appointed by the judge (9 months) | 105.00 | 945.00 |
| 1 senior book-keeper (9 months) | 105.00 | 945.00 |
| 1 principal probate minute clerk (9 months) | 165.00 | 1,485.00 |
| 2 probate minute clerks (9 months) each | 125.00 | 2,250.00 |
| 1 junior stenographer (9 months) | 85.00 | 765.00 |
| 1 probate fee clerk (9 months) | 165.00 | 1,485.00 |
| 5 senior clerks (9 months) | 125.00 | 5,625.00 |
| 3 senior clerks (9 months) each | 105.00 | 2,835.00 |
| 8 junior clerks (9 months) each | 100.00 | 7,200.00 |
| 3 junior clerks (9 months) each | 90.00 | 2,430.00 |
| 1 principal record writer probate (9 months) | 150.00 | 1,350.00 |
| 4 probate record writers (9 months) | 125.00 | 4,500.00 |
| 2 senior typists (9 months) each | 75.00 | 1,350.00 |
| 1 principal clerk folio div. (9 months) | 150.00 | 1,350.00 |
| 1 senior clerk (9 months) | 125.00 | 1,125.00 |
| 2 junior clerks (9 months) each | 90.00 | 1,620.00 |
| 9 senior typists (9 months) each | 75.00 | 6,075.00 |
| 2 junior stenographers (9 months) each | 83.33 | 1,500.00 |

By a comparison with the items which were contained in the original appropriation bill as appropriations for the offices of county treasurer and clerk of the probate court

and which were vetoed by the president of the board, it
will be seen that the appropriations of March 22, 1913,
did not pretend to be a reconsideration of the vote of the
board on the vetoed items of the original appropriation bill
but were new and independent appropriations. The items
contained in the original bill and which were vetoed were
not followed in the appropriation bill of March 22, as can
be seen by the comparison made in the appropriations for
the offices of the county treasurer and clerk of the probate
court, but were widely departed from. While in some de-
partments the items provided for by the appropriation bill
of March 22 coincided with those vetoed except in amount,
to a large extent the appropriation bill of March 22 does
not pretend to follow the vetoed items of the original ap-
propriation bill.

The president vetoed the following items in the original
appropriation bill under the heading, "General supplies:"

Oak Forest institutions............................$191,917.50
County hospital .................................... 237,500.00
County agent indigent poor relief fund.............. 224,540.00
Home for delinquent and dependent children......... 10,000.00

And also the following items:

Superintendent of public service, store-room fund..... $14,000.00
Roads and bridges fund........................'...... 60,000.00
Parents' pension fund............................. 150,000.00
Building, new construction and betterments fund...... 20,000.00
Miscellaneous fund ............................... 22,922.76

By the resolution of March 22 appropriations were made
for these items, as follows:

Oak Forest institutions, general supplies.............$201,917.50
Cook county hospital, general supplies............... 247,500.00
County agent indigent poor relief fund.............. .229,540.00
Home for delinquent and dependent children, general
    supplies ......................................... 17,000.00
Superintendent public service, store-room fund....... 15,000.00
Roads and bridges fund............................ 90,000.00
Parents' pension fund.............................. 165,000.00
Building, new construction and betterments fund...... 30,000.00
Miscellaneous purposes fund........................ 25,088.35

It will thus be seen that a very material increase was made in the appropriations for the items last enumerated.

The statute prescribing the powers and duties of the board of commissioners of Cook county, in so far as the same relates to its powers to pass appropriation bills and make levies of taxes, confers practically the same powers as those given the mayor and city council by the Cities and Villages act to levy taxes. Under the Cities and Villages act it has been held that the requirement that the appropriation ordinance shall be passed within the first quarter of the fiscal year is a provision in the interest of the taxpayers and that a compliance with that provision is a prerequisite to the passage of a tax levy ordinance and a failure to pass the appropriation ordinance until after the end of the first quarter of the fiscal year is a fatal omission, which renders the tax invalid. (*People* v. *McElroy,* 248 Ill. 574; *People* v. *Read,* 261 id 502.). What was said in those cases applies to the appropriation bill of the board of commissioners of Cook county. It is true that when an appropriation bill or ordinance has been passed within the first quarter of the fiscal year and the veto of the president of the board or mayor is not received until after the first quarter of the fiscal year has ended, the board of county commissioners or the city council, as the case may be, has power to reconsider the vote by which the items vetoed were originally passed, and if the majority prescribed by the statute concur in passing such items the same shall take effect notwithstanding the veto and notwithstanding the fact that final action was not had until after the end of the first quarter of the fiscal year. This is upon the theory that the reconsideration of the vote by which the items were originally passed relates back to the time of the passage of the original appropriation bill or ordinance. This was the holding of the court in *Fairfield* v. *People,* 94 Ill. 244, and *King* v. *City of Chicago,* 111 id. 63. In the latter case it

266 − 11

was held that ·where the mayor of a. city returns an appropriation ordinance that is vetoed as to one item thereof for the reason that it is too large, the same having been passed on the last day of the quarter of the fiscal year but returned at the next meeting of the council thereafter, and the city council then passes the same at a reduced sum over the veto, this will be regarded as an adherence to the appropriation as made in part, and the same will be legal as having been passed in proper time. The basis of this holding is that the right to pass the whole over the veto includes the power to pass·the same in part, and that adhering in part to the item of appropriation is not a further appropriation. These two authorities are relied upon by appellee as conferring upon the board of county commissioners the right to make the appropriations of March 22. The mere fact that the board of county commissioners delayed taking final·action until March 22 would not, of itself, render the action invalid. The items of the appropriation bill which were vetoed by the president were numerous and involved in the aggregate a large sum of money. To reconsider each of these items and determine whether it was best to adhere to the action of the board in passing them as a part of the original appropriation bill might well take some time, and we are not prepared to say that the time taken, when considered in connection with the other duties of the board, was unreasonable. The fatal objection to the action of the board of commissioners in this particular is that it made no attempt to reconsider the vote by which these items were originally appropriated. The record of the board discloses clearly that its intent was to appropriate for other items in the place of those vetoed by the president. The resolutions making the appropriations of March 22 state that the same are made in place of the items and sums in the annual appropriation bill theretofore disapproved and vetoed. Among the items for which appropri-

ations were made by the resolutions of March 22 appeared many that were nowhere mentioned in the original appropriation bill, and which therefore did not receive the consideration of the board of county commissioners at the time the original appropriation bill was passed or of the president of the board when he returned the same. In other instances appropriations for items which were contained in the original appropriation bill and which were disapproved and vetoed were materially increased. To make these appropriations, although for the same items, in a largely increased sum cannot be said to be an adherence to the vote by which the original appropriation bill, or any of the items thereof, was passed.

The statute requiring the board of commissioners of Cook county to pass its appropriation bill within the first quarter of the fiscal year is mandatory and must be followed. As no attempt was made, after the receipt of the veto message of the president, to reconsider the vote by which the vetoed items had been originally passed, as the statute plainly requires, the veto of the president became absolute, and the board was without power to pass any further or additional appropriation bill after the end of the first quarter of the fiscal year. The appropriation of March 22, 1913, being invalid, the objection of appellant to the collection of this portion of its tax should have been sustained.

The judgment of the county court is reversed and the cause remanded to that court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*