# Edward W. Morrison, Appellee, v. Moir Hotel Company, Appellant.

## Gen. No. 22,756.

1. TAXATION—*what is nature of a tax levy.* A tax levy is a legislative function, the formal vote or action of the body authorized to make the levy, and is not merely the ministerial action of ascertaining the rate per cent.

2. TAXATION—*when State levy may be made.* Under the Constitution of the State no time is fixed within which a State tax levy may be made.

3. TAXATION, § 134*—*when presumed taxes are levied.* It will be presumed that the statutes relating to the levy of taxes on real estate provide for such levy prior to April 30th.

4. MUNICIPAL CORPORATIONS, § 1196*—*when ordinance levying tax may be passed.* An ordinance of a city levying a tax may be passed at any time after the annual appropriation bill has been adopted and prior to the time the certified copy of the tax levy ordinance is required to be filed with the county clerk.

5. TAXATION, § 316*—*when taxes become a lien on real estate.* Under Rev. St. 1915-16, ch. 120, secs. 303, 306 (J. & A. ¶¶ 9524, 9527), taxes for the year 1911 on real estate were assessed as of April 1, 1911, and became a lien on that date, although the assessment may not have been actually made until after that date.

6. TAXATION—*what considered as date of assessment.* In the absence of evidence as to when an assessment on real estate was actually made, the date when the taxes assessed became a lien must be considered as the date of the assessment.

7. LANDLORD AND TENANT, § 199*—*when taxes are rent.* The covenant by a lessee in a lease to pay taxes is an agreement to pay them as part of the rent.

8. LANDLORD AND TENANT, § 199*—*how covenant to pay taxes construed.* Any construction of a covenant of a lease that the lessee should pay taxes on the leased premises levied or assessed during the term of the lease which would impose upon the lessee the payment of taxes levied or assessed prior to the beginning of such term would be inequitable and unjust.

Appeal from the Superior Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding. Heard in this court at the October term, 1916. Reversed. Opinion filed March 26, 1917. *Certiorari* denied by Supreme Court (making opinion final).

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCIV 28

CAMPBELL & FISCHER and MATTHIAS CONCANNON, for appellant.

JAMES R. WARD, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit against defendant to recover certain taxes which it is said defendant was obligated to pay by virtue of the provisions of a written lease of premises in Chicago from the plaintiff to the defendant. Upon trial the court instructed a verdict for the plaintiff for $1,912.22, upon which judgment was entered, from which the defendant has appealed.

The evidence shows a lease for a term commencing April 30, 1911, and ending April 30, 1921, at a specified rent, payable in monthly instalments. It contained provisions that the lessee should—

"pay to the said lessor, his heirs, administrators, executors or assigns the said rent, in installments hereinafter specified for said demised premises from April 30th, 1911, together with all water rates, taxes and assessments * * * levied or assessed annually, or from time to time upon the said demised premises, or any building or improvement situated thereon, or levied or assessed upon the interest of the lessor in or under this lease, or in or to said premises or improvements, or any part thereof, each year during the existence of this lease, in apt time to prevent sale or forfeiture thereof * * *."

It was also provided that—

"the lessor shall have the right, at his option, at all times during said demised term, to pay all water rates, taxes * * * when due and payable, and to pay, cancel, and clear off all taxes, tax sales, * * * and to redeem said premises from the same, from time to time in default of the lessee so to do, and the amount so paid by the lessor * * * shall be added and be additional rent due from the lessee to the lessor."

Plaintiff also introduced a tax receipt, in the ordinary form, issued from the county collector's office of Cook county, indicating that Edward W. Morrison had paid one-third of the taxes upon the leased premises in full of "State, county, city, town, school, road, park, drainage and corporation taxes due for the year 1911," and the attorney for the plaintiff testified that this payment was made on behalf of the plaintiff. The remaining two-thirds of the taxes for the year 1911 had been paid by the defendant. No other material evidence was given upon the trial by plaintiff. The defendant introduced no evidence, but made a written motion to instruct the jury to find for the defendant, which motion was refused. We are of the opinion that this motion should have been allowed for the reason that under the lease the defendant was obligated to pay only those taxes levied or assessed after April 30, 1911 (the beginning of the term of the lease), and plaintiff failed to prove upon the trial that any of the taxes sought to be recovered were levied or assessed after that date.

Plaintiff contends that under the statutes of Illinois the taxes of any year are "levied or assessed" after April 30th of that year. We do not agree with this contention.

What is a tax levy? Inspection of the statutes and of decisions of our courts leads us to conclude that a tax levy is the formal vote or action of the body authorized to make the levy. It has been defined as "the formal and official action of a legislative body * * * determining and declaring that a tax of a certain amount, or of a certain percentage on value, shall be imposed on persons and property subject thereto." 37 Cyc. 964.

In *Gray v. Board of School Inspectors*, 231 Ill. 63, it is said that to levy a tax is "to determine by vote the amount of tax to be raised." The levying of taxes

is not merely the ministerial action of ascertaining the rate per cent. Under our statute the power to levy taxes is given in express language. Section 25, chapter 34 (J. & A. ¶ 2769), provides that: "The county boards of the several counties shall have power * * * to cause to be annually levied and collected taxes for county purposes." Section 62, article V, chapter 24 (J. & A. ¶ 1334), grants to the city council power "to levy and collect taxes," and in section 1, article 8, chapter 24 (J. & A. ¶ 1383), the manner in which the city council shall levy taxes is specified, distinguishing between the fixing of the rate per cent. and the levying of a tax. The same distinction is observed in section 118, chapter 120 (J. & A. ¶ 9337), and this distinction is recognized in *People v. Bowman*, 253 Ill. 234; *People v. Chicago, B. & Q. R. Co.*, 266 Ill. 150, and many other cases.

It is established by the foregoing that the levy of a tax is a legislative function, and the mere ministerial duty imposed upon the governor, auditor, treasurer and county clerk of ascertaining "the rate per cent." as provided by the statutes is not the levy of a tax.

The declaration counted only for taxes paid by plaintiff and levied by the State of Illinois, County of Cook, City of Chicago, and South Park Commissioners, and we shall confine ourselves to these bodies with reference to the time of the tax levy. When were these taxes levied? The Constitution, section 1, article 9, provides that the General Assembly "shall provide such revenue as may be needful by levying a tax," but no time is fixed within which such levy may be made. So far, then, as appears from anything before us, the levy for state taxes may have been made prior to April 30, 1911.

The board of county commissioners, under section 61, paragraph 6, chapter 34 [J. & A. ¶ 2810(6)] of the statute, must pass an annual appropriation bill within

the first quarter of each fiscal year; and.it has been decided in *People v. Chicago, B. & Q. R. Co.*, 266 Ill. 150, that "the fiscal year of Cook County begins on the first Monday of December of each year." By section 121 of chapter 120 (J. & A. ¶ 9340) it is provided that where. the county board is "required to pass an annual appropriation bill within the first quarter of the fiscal year, the tax levy above provided for may be made at any time after such annual appropriation bill shall be in full force and effect." It follows, therefore, that the Board of Commissioners of Cook county must have adopted an appropriation bill some time in the early part of March, 1911, and the tax levy for the county taxes for that year might have been made by that board some time before April 30, 1911, the date of the commencement of the term of the lease.

Coming now to cities, we find that under the provisions of paragraph 3, section 1, article V, chapter 24, section 62, chapter 24 [J. & A. ¶ 1334(3)], that city councils have power "to levy and collect taxes for general and special purposes on real and personal property," and by section 2, article VII, chapter 24 (J. & A. ¶ 1361), it is provided that the annual appropriation bill shall be passed "within the first quarter of each fiscal year," and by section 1, article VII (J. & A. ¶ 1360), it is provided that the fiscal year of the city shall commence "at the date established by law for the annual election of municipal officers therein, or at such other times as may be fixed by ordinance." We are not informed as to when the fiscal year of 1911 of the City of Chicago began. By section 1, article VIII, chapter 24 (J. & A. ¶ 1383), it is provided that the city council shall "on or before the third Tuesday in September in each year,   *   *   *   by an ordinance   *   *   *   levy the amount so ascertained upon all the property subject to taxation.   *   *   *   A certified copy of such ordinance shall be filed with the county clerk."

*People v. Bowman,* 253 Ill. 234, supports the proposition that an ordinance of a city levying a tax may be passed at any time after the annual appropriation bill has been adopted and prior to the time the certified copy of the tax levy ordinance is required to be filed with the county clerk. It is possible, and perhaps probable, that the tax levy ordinance of the city for the fiscal year of 1911 was passed before April 30th.

Under section 28, chapter 105 (J. & A. ¶ 7956), the levy of the board of park commissioners may be made "on or before the first day of August of each year."

While we do not learn from the statutes precisely when the taxes are levied, a reasonable inference is that it is prior to April 30th, and in the absence of anything to the contrary we shall presume this to be the fact.

When were the taxes assessed? Under the Illinois statutes, sections 303 and 306, chapter 120, Hurd's Rev. St. 1915-16, page 2217 (J. & A. ¶¶ 9524, 9527), the taxes of 1911 were assessed as of April 1, 1911, and became a lien on that date (section 347, chapter 120, page 2231, J. & A. ¶ 9570), and although the assessment might not actually have been made on that date, yet in law when the assessment was made it related back to and became effective as of April 1, 1911. There is no evidence before us as to when the assessment actually was made, and in the absence of such evidence we must hold that the date when the taxes became a lien must be considered as the date of assessment. If we are correct in this, it follows that it cannot be said that under the statute the taxes of 1911 were assessed after April 30th.

In *Amory v. Melvin,* 112 Mass. 83, the court adopted this construction of a similar statute and said:

"But it is immaterial when the valuation of estates is completed or when the tax is payable. The assessment when completed relates back to the first of May,

and the tax is in law regarded as assessed on that day.''

The construction of the lease contended for by plaintiff would obligate defendant to pay taxes not only for the entire year of 1911, but also for the last year of the lease, 1921, which would mean payment of taxes for eleven years on a ten-year lease. We do not believe that such construction is warranted from the language of the instrument. The provisions clearly show that the intention of the parties was a demise of ten years with payment of taxes for ten years. The covenant to pay taxes is an agreement to pay them as part of the rent, and if the taxes were levied or assessed prior to the beginning of the term, any construction which would impose their payment on the defendant would be inequitable and unjust. *McManus v. Fair Shoe & Clothing Co.*, 60 Mo. App. 216; *Wilkinson v. Libbey*, 1 Allen (Mass.) 375, and *Cleveland v. Spencer*, 73 Fed. 559. We are in accord with what was said by Lord Justice Mathew in *Surtees v. Woodhouse*, [1903] 1 K. B. 396:

''In my opinion, it is clear that, having regard to the prospective character of the sublease, it could not have been intended to impose upon the lessee an already existing charge, which had become chargeable on the lessor in respect of the premises before the lease was granted. * * * I do not see anything in any of the terms of the sublease to suggest an intention that the sublessee should be made liable in respect of expenses already incurred, and which had become a charge on the premises and on the owner in respect thereof before the commencement of the term.''

Plaintiff has failed to prove that the taxes which he seeks to recover were levied or assessed subsequent to April 30, 1911, and under the construction we have given to the lease we hold that he is not entitled to recover the taxes levied or assessed prior to that date.

For the reasons above indicated the judgment is re-

versed and judgment of *nil capiat* will be entered in this court.

*Reversed.*