### City of Joliet v. Louis Petty.

1. SALARIES—*Ordinances Fixing Can Not be Amended or Repealed by a Resolution.*—An ordinance of a city organized under the general incorporation law of this State, fixing the salary of an officer, can not be altered or repealed by the adoption of a resolution to that effect.

2. ORDINANCES—*When Not Repealed by Implication.*—Where a city incorporated under the general law adopts an ordinance, fixing the salary to be paid to the incumbent of a city office, such ordinance is not repealed, by implication, by the subsequent adoption of an annual appropriation bill, appropriating a different sum for such salary, notwithstanding the act of April 23, 1873.

Assumpsit, for moneys due as salary.  Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding.  Heard in this court at the April term, 1901.  Affirmed.  Opinion filed July 12, 1901.

R. J. BARR, attorney for appellant.

SPRAGUE & LAGGER, attorneys for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On May 18, 1896, Louis Petty was appointed to the office of bridewell keeper of the city of Joliet; the appointment was on that date confirmed by the city council, and he shortly thereafter entered upon the duties of that office. On May 10, 1897, and on May 9, 1898, he was re-appointed and confirmed to the same office.  The term of office under each appointment was fixed by ordinance at one year. Petty resigned about the middle of April, 1898.  During his incumbency as bridewell keeper he received from the city weekly payments varying slightly in amount but aggregating $600 per year.  He claimed the salary of his office was $720 per year, and brought this suit to recover the difference of $120 per year remaining unpaid for the time he held the office.  The cause was tried without a jury, and plaintiff recovered a judgment for $320.  Defendant appeals. No propositions of law were presented.  It is not argued that the court erred in any rulings upon the admissibility of evidence.  The only question argued is whether, under the proofs, plaintiff was entitled to recover.

1.  The city of Joliet was organized under the general law or charter for the incorporation of cities, chapter 24 of the Revised Statutes, in force July 1, 1872.  Article 5, section 1, clause 69, gave the city power to appoint a bridewell keeper.  The city established the office of bridewell keeper by its revised ordinance, adopted in 1884, and re-established it by its revised ordinances of 1891.  By section 15 of article 6 of the charter the city was required to fix salaries, fees or compensation of its officers by ordinance, and it was there enacted that when once so fixed such salary, fees or compensation could not be increased or diminished during the

term for which the officer was elected or appointed. By an ordinance adopted in 1891, the yearly compensation of bridewell keeper of the city of Joliet was fixed at $720. Up to the time when Petty resigned, that ordinance had never been expressly repealed. Unless it had been repealed by implication, or Petty had done some act creating an estoppel against him, the judgment of the court below is right.

2. Shortly before Petty was first appointed the city council adopted a resolution fixing the salary of bridewell keeper for the ensuing year at $600. Shortly before he was appointed the second time the city council adopted a resolution that the salaries of city officers for the ensuing fiscal year should be the same as the year before, with certain exceptions which did not include bridewell keeper. In this State an ordinance can not be amended or repealed by resolution. (Hibbard v. City of Chicago, 173 Ill. 91; C. & N. B. R. R. Co. v. City of Chicago, 174 Ill. 439; Galt v. City of Chicago, 174 Ill. 605; People ex rel. v. Mount, 186 Ill. 560.) Therefore these resolutions did not repeal the ordinance of 1891 fixing the yearly compensation of bridewell keeper at $720, and had no bearing upon the question to what rate of compensation Petty was entitled.

3. The city relies here upon Love v. Mayor and Aldermen of Jersey City, 40 N. J. Law 456. Love was appointed city collector under a statute fixing his compensation at $5,000 per year. Afterward another statute was passed authorizing the city collector to receive a salary not exceeding $4,000 per year. Thereafter the proper governing body of the city passed a resolution reducing Love's salary to $3,000 per year. From that time on, warrants were issued to him monthly at the rate of $3,000 per year, each stating it was for his salary for the month named. These he accepted, but gave receipts specifying the sums were received on account; and he notified some members of the board he should claim payment at $5,000 per year. The court held that under the second statute the board had the power to reduce his salary to $3,000 and that if he was dissatisfied his remedy was to resign. As the charter of the

City of Joliet v. Petty.

city of Joliet, as above cited, forbids the city council to make an increase or diminution of the salary of an officer to take effect during his term of office, and as the salary of bridewell keeper was required to be and was fixed by ordinance, and the ordinance could not be repealed by resolution, the New Jersey case above cited is inapplicable here.

4. As soon as Petty received his first pay he protested to the mayor that it was insufficient. During his three terms he had repeated interviews with the mayor, the chief of police and the chairman of the committee on police, in which he claimed he was not being paid the salary to which he was entitled, and in which he was repeatedly assured the matter would be adjusted and the proper compensation paid him. While these assurances did not bind the city, this proof shows he was not receiving the smaller salary without protest, and that the governing officers of the city were aware of his contention. The warrants paid him did not specify they covered his salary for any particular period. There is evidence tending to show that the previous bridewell keeper had been receiving $900 per year, and also room rent, lights and fuel, free, in a city building, and that the reduction to $600 was in view of those perquisites, but that during the first week after Petty was installed the the city turned these rooms into a court room for the police magistrate and an office for the chief of police, thus excluding Petty from the perquisites which had led to the attempted reduction in salary; and that it was because of this that he was assured by the mayor and other officers that the matter would be adjusted. The facts proved did not create an estoppel. The city was not in any way misled to its detriment. The argument that Petty should have resigned when he found he was not being paid his legal salary is not valid under this charter, which forbids a reduction in salary to take effect during the term, and which required any reduction to be by ordinance.

5. By an emergency act in force April 23, 1873, it was provided that city councils might fix the amount of salary to be paid city officers, " in the annual appropriation bill

or ordinance made for the purpose of providing for the annual expenses of any such city, or by some ordinance prior to the passage of such annual appropriation bill or ordinance; and the salaries or compensation thus fixed or established shall neither be increased nor diminished by the said common council or legislative authority of any such city, after the passage of said annual appropriation bill or ordinance, during the year for which such appropriation is made, and no extra compensation shall ever be allowed to any such officer or employe over and above that provided in manner aforesaid." In the annual appropriation bill passed by the city council of the city of Joliet in August, 1895 (before Petty was first appointed), there was appropriated $900 for the salary of bridewell keeper. The annual appropriation bills passed in 1896, 1897 and 1898, appropriated $600 each year for the salary of bridewell keeper. If these appropriation ordinances operated to impliedly repeal the ordinance of 1891 fixing the salary of bridewell keeper at $720 per year, then the judgment of the court below was not warranted. The appropriation bills do not profess to repeal any prior ordinance. Repeals by implication are not favored. A later statute or ordinance will not be construed to work an implied repeal of a former enactment if the two can reasonably stand together. (Town of Ottawa v. County of La Salle, 12 Ill. 339; Covington v. City of East St. Louis, 78 Ill. 548.) The field covered by the ordinance of 1891 is not the same as that of the appropriation bills. The former fixed the salaries of the officers from year to year for all time, till repealed or amended. Each appropriation bill was expressly limited to the current fiscal year, which began July 1st. To hold that the ordinance fixing the salaries permanently was repealed by implication by the first appropriation bill which varied from it as to the amount appropriated for salaries, would lead to confusion. For instance, when Petty took the office that fiscal year was covered by an appropriation bill which appropriated $900 for bridewell keeper. But by the terms of that ordinance it expired with the last day of June, 1896. It made no provision for any salary after that date.

City of Joliet v. Petty.

Assuming the ordinance of 1891 as to the salary of bride-well keeper had been thereby repealed, then Petty took office under an ordinance which fixed his compensation at $900 per year till June 30th, but with no provision for any salary thereafter; and by the charter that arrangement as to compensation could not be changed during his term. Would that mean that the city must pay him at the rate of $900 per year for the whole of the first year (a position warranting a judgment for $300 here), or that after June 30, 1896, Petty should receive no further salary till the end of his year? An ordinance required that the officers be appointed annually at the first meeting in May, and the fiscal year ended June 30th, and if the ordinance of 1891 had been repealed by implication there was no authority to pay any city officer any salary after June 30, 1896, at least not till his salary had been again fixed in the next appropriation bill, which might be passed either in July, August or September. It is evident that to hold the ordinance of 1891 repealed by implication would produce an unreasonable and confusing result. It may well be doubted whether it was the purpose of the act of 1873 to authorize a repeal by appropriation bill, of salaries fixed by prior ordinance. The language is that the city may fix the salaries by the appropriation bill or by an ordinance passed prior to the appropriation bill. The emergency clause recites that the corporate authorities of certain cities had no power to fix the salaries of their city officers in certain cases. The meaning of the act appears to be that, because of a state of affairs existing in certain cities, city councils were thereby authorized to fix the salaries of their officers by the annual appropriation bill if they had not already been fixed by ordinance. We therefore conclude the more reasonable view in that the appropriation bills did not repeal the ordinance of 1891, and that the salary of bride-well keeper fixed thereby at $720 per year remained in force, but that the city failed to make a sufficient appropriation in 1896, 1897 and 1898 to pay it. The judgment is therefore affirmed.