The People of the State of Illinois ex rel. Elmer Henry-
son et al., Appellees, v. City of Elgin et al., Appel-
lants.

Gen. No. 9,149.

Opinion filed January 18, 1937.

Perry D. Wells, Glenn R. Beverly and Paul G.
Funk, all of Elgin, for appellants.

Theodore N. Schnell, of Elgin, and James Her-
rington Scott, of Geneva, for appellees.

MR. JUSTICE WOLFE delivered the opinion of the court.

On February 19, 1935, the plaintiffs, 64 in number, filed in the circuit court of Kane county their petition for a writ of mandamus to compel the defendants, the city of Elgin, and Myron M. Lehman and Morgan M. Brightman, the mayor and the city clerk of Elgin, to draw, issue and sign city warrants in favor of the plaintiffs for the alleged unpaid balances of their respective monthly salaries, as policemen and firemen of the city. They claim pay for 10 months of the year 1932, all of 1934 and January 1935. During the time, some of the plaintiffs were policemen and the others firemen of the city of Elgin.

There is a stipulation in the record which, in part, is substantially as follows: ''That all plaintiffs were duly appointed by the board of fire and police commissioners of the City of Elgin, and that they were members and officers of the police and fire departments for many years prior, to and during 1932, 1934 and January 1935, and performed their duties as such policemen and firemen, as required by law. The stipulation also states that, out of the salaries actually paid to the plaintiffs, during the time in question, the city deducted the legal amounts to be paid to the police and firemen's pension funds.'' It is not disputed that the petition correctly sets forth the positions held by the plaintiffs as officers and members of the police and fire departments of the city, during the time in question; or that some of the plaintiffs retired from the departments on pension before January, 1935, and that some of them were appointed to their said positions after 1932. No claim is made by the plaintiffs for any unpaid salaries for the months of January and February, 1932, for reasons which hereafter appear.

The petition is drawn on the theory that the appropriation ordinances of the city of Elgin adopted at the beginning of the years 1932, 1934 and 1935, fixed and

determined the salaries of the plaintiffs as policemen and firemen; that the city has paid to the petitioners less than the amounts provided for in the appropriation ordinances and that the writ of mandamus should issue to compel the payment of the balance due each plaintiff. The petition alleges that the plaintiffs were paid their salaries during January and February of 1932, according to the salaries provided by the appropriation ordinance for that year. No claim is made for unpaid salaries for those two months. The plaintiffs make no claim for unpaid salaries in 1935, other than for the month of January. Demand for unpaid balances of salaries were made on the city by the petitioners on February 8, 1935. The amounts claimed by the plaintiffs vary, and total $20,013.51. The city of Elgin operates under the commission form of government and has so operated continuously since January 21, 1911.

Paraphrasing several paragraphs of the petition, it charges that on January 4, 1932, on January 12, 1934 and on January 9, 1935, the city passed an ordinance termed ''Appropriation Ordinance for the year, '1932,' '1934,' and '1935' '' of the city of Elgin; that those ordinances made provisions in respect to salaries of police and fire departments of the city. These provisions, for each year, are set out in the petition. Thus, for the year 1932:

''POLICE DIVISION.''

''(a) Salary of City Marshal . . . . . . . . . . . . . $2,400.00
  (b) Salary of Lieutenants . . . . . . . . . . . . . . 4,200.00
  (c) Salary of Sergeants . . . . . . . . . . . . . . . 9,390.00
  (d) Salary of Patrolmen . . . . . . . . . . . . . . . 39,600.00
  (e) Salary of Merchant Police . . . . . . . . . . 2,796.00
  (f) Salary of Special Police . . . . . . . . . . . . 250.00
  (g) Salary of Police Matron . . . . . . . . . . . . 62.50
  (h) Secret Service . . . . . . . . . . . . . . . . . . . . 400.00
  (i) Salary of Detective . . . . . . . . . . . . . . . . 2,100.00''

"Fire Division."

"(a) Salary of Fire Marshal..............$2,400.00
(b) Salary of Captain No. 1 Station..... 2,100.00
(b) Salary of Captains (5) ............. 9,450.00
(b) Salary of Lieutenants (4) .......... 7,440.00
(c) Salary of 25 Firemen...............45,000.00
(d) Salary of Repair Mechanic ......... 1,860.00"

The provisions in the Appropriation Ordinance for 1934 and 1935 are in material respects the same, excepting as to the amounts appropriated.

The petition further alleges that by ordinances passed April 23, 1907, for the police department, and on April 3, 1907, for the fire department, and subsequently amended, said city made provisions for and created the offices of captain of the fire department, first deputy marshal, second deputy marshal, lieutenant, firemen, mechanic, lieutenant of police, sergeant of police, patrolman and merchant police.

Material allegations of the petition are substantially as follows: "That said appropriation ordinances became and continued in full force and effect throughout 1932, 1934 and January 1935; that in the performance of their duties as members of said departments petitioners became and were entitled to receive their said salaries to the full amount thereof for 1932, 1934 and January 1935; that said city in fixing said salaries and in adopting said appropriation ordinances appropriating funds for the payment of said salaries and passing a tax levy ordinance in accordance therewith and based thereon, determined the amounts thereof to be received by petitioners for 1932, 1934 and January 1935; that said sums so fixed as their salaries having been thus fixed and a fund for the payment thereof having thus been appropriated in accordance with the Statute, said amounts were not subject to change or alteration by said city or any of its officers during said years; that

petitioners have at no time agreed or consented to a change or a reduction in their salaries as thus appropriated.''

Further, ''That during January and February 1932, petitioners received the full proportionate amount of their said annual salaries legally provided for by said appropriation ordinance less a reduction of 1 per cent for police and firemen's pension fund; that thereafter about March 1, 1932, an executive order was issued, which petitioners are informed and believe came from the office of the mayor of said city, and it was ordered that each of said petitioners herein shown to have been members of the police and fire departments during 1932 be compelled to take a 10 per cent reduction in their salaries beginning with March 1932; that said reduction was made during the months of March to October 15, 1932, inclusive; that thereafter on said date an executive order was issued, which petitioners are informed and believe came from the office of the mayor of said city, that each petitioner be compelled to take a further reduction in the sum of 15 per cent in their monthly salaries for the year 1932; that said 15 per cent reduction continued for the balance of 1932.''

Also, ''That petitioners during 1934 were compelled by executive order issued, which petitioners are informed and believe came from the mayor's office, during the month of January 1934, to take a 10 per cent reduction in their salaries; that during January 1935, petitioners were compelled, by executive order as aforesaid, to take a 10 per cent reduction in their salaries. That petitioners objected and protested against the enforcement of all said orders, but were compelled to abide by the same by coercive threats of further reduction.''

These allegations of the petition are denied by the answer of the defendants. The answer alleges that the fire department is an executive department of said city

composed of officers and employees as provided by ordinance of April 3, 1907, as amended; that the police department is an executive department of said city composed of officers and members as provided by ordinance of April 23, 1907; that the salaries of said officers and employees are fixed and determined by the council of said city as an administrative or executive function.

The answer further alleges that the several appropriation ordinances were passed and adopted thereby fixing the maximum amounts to be expended by the city in the period covered by said ordinances.

The answer further alleges that on February 15, 1932, the city council by executive and administrative act changed the amount of compensation to be paid to each employee and officer by deducting from the annual pay roll a sum equal to one month's pay for each member of said departments based upon the then prevailing rates of pay; that said action was taken in said manner for the purpose of retaining basic rates in order that members of such departments then eligible or to become eligible for pension might retire on the most favorable pension pay basis. That subsequent thereto and during periods mentioned in the petition, and in 1932, 1934 and January, 1935, said city council caused further changes in compensation, causing a total deduction of approximately 25 per cent from the basic rate of pay as fixed prior to March 1, 1932.

The plaintiffs introduced in evidence an ordinance of the city of Elgin, passed April 2, 1907, which established the fire department of the city, provided for its organization, membership and officers. Section four of the ordinance provides: ''Each fireman and employe shall receive such salary and compensation as shall be fixed either annually in the Appropriation Ordinance, or from time to time lawfully by the City Council.'' Plaintiffs also introduced in evidence an ordinance of the city, passed April 23, 1907, which established the

police department of the city, provided for its organization, membership and officers. Section 2, of the ordinance provided: The city marshal shall receive a salary at the rate of $1,160.00 per year. "The salary of the Lieutenant shall be at the rate of $960.00 per annum; of each Sergeant at the rate of $930.00 per annum; of each Policeman employed by the year except jailor and nightwatchman, operator and clerk, merchant-police and special policeman or watchman, shall be at the rate of $870.00 per annum."

The plaintiffs also introduced in evidence section 1 of chapter 46, of the Revised Ordinances, part of which is as follows: "All ordinances of the city shall be construed together so that every provision thereof may stand, and no ordinance shall be held repealed, unless expressly so provided or that the older provision or part is so repugnant to the newer provision or part that both cannot stand. All general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the ordinance may be carried out and its objects and purposes accomplished."

There was also introduced in evidence by the plaintiffs section four, of the Revised Ordinances of the city, which provides: "The salary and compensation of all officers, clerks and employees of the city shall be lawfully fixed and determined before their term of office, duties, work or employment begins, and no further compensation or salary shall be allowed any such officer, clerk or employee."

Plaintiff introduced in evidence the pay rolls of the police and fire departments for 1932, 1934 and January, 1935, which show the amount of salary paid each plaintiff each month and his receipt therefor; and shows the certificate of the fire marshal and city marshal in the case of the fire and police department pay rolls, stating under oath that said pay rolls are cor-

rect; and the approval in writing of the commissioner of accounts and finances and of the superintendent of the fire and police division, and also the approval by the city council.

In the fire department these pay rolls show that in the months of January to September, 1932, inclusive, there were: one fire marshal, one captain No. 1, station, one captain No. 2, station, one captain No. 3, station, one captain No. 4, station, one captain No. 5, station, one captain hook and ladder company, one lieutenant No. 1, station, one lieutenant No. 2, station, one lieutenant No. 3, station, one lieutenant No. 5, station, one mechanic and 25 pipemen and drivers. In October, 1932, during the first half of the month there were 25 pipemen and drivers, but during the second half of the month there were 19 pipemen and drivers, there was no mechanic during any part of the month, and during the second half there was no captain No. 3, station. In November and December, 1932, there were 19 pipemen and drivers, no mechanic and no captain No. 3, station. Throughout 1934, and January, 1935, there were one fire marshal, one deputy fire marshal, one second deputy fire marshal, one captain No. 2, company, one captain No. 3, company, one captain No. 4, company, one mechanic and 20 pipemen and drivers.

In the police department these pay rolls show that in 1932 there were one city marshal, two lieutenants, two sergeants, three desk sergeants, one detective, 22 patrolmen, five merchant police and one police matron each month except as follows: In January there were 21 patrolmen for half of the month: in July there were 21 patrolmen except for five days; in September there were 21 patrolmen for part of the month; in October there were 18 patrolmen and for half the month there were two desk sergeants; in November and December there were 19 patrolmen and one desk sergeant; throughout 1934 and January, 1935, there were the city

marshal, three lieutenants, one detective, one sergeant, 19 patrolmen, five merchant police and one clerk each month except as follows: In January, 1934, there were 20 patrolmen; in February there were four lieutenants and 18 patrolmen; in March, April and May there was in addition a sergeant-detective; in June there were two lieutenants, but there were in addition two sergeant-detectives; in July and August there were two detectives and two lieutenants and also one sergeant-detective; in September, October, November and December there were two lieutenants and two sergeant-detectives, and during half of October there were 18 patrolmen; in January, 1935, there were also two lieutenants and two sergeant-detectives.

Witnesses called by the plaintiffs testified that a committee of police and firemen interviewed the mayor in 1933, and presented a petition for an increase in pay. They were told by the mayor that he was willing that they should have it and that he would give it to them, but that they never received it.

Copies of· the appropriation ordinances of the city for the years 1932, 1934 and 1935, are attached to the pleadings filed by the parties. In addition to the items appropriating amounts for salaries of policemen and firemen as stated in the petition, the ordinances provide many other items with appropriations for other expenses of these departments, such as "Repairs and renewals on automobiles"; "Operating automobiles and motorcycles," etc., "Chemicals, waste, oil, sponges and chamois"; "Replacement of hose and nozzles," etc. The appropriation ordinances provide: "The following sums or so much thereof as may be authorized by law, be and the same are, hereby appropriated for corporate purposes for the City of Elgin, Illinois, for the fiscal year commencing January 1st, . . . and ending December 31st. . . ." The appropriation ordinances also provide: "That the Council of the City of

Elgin or any commissioner is hereby required to limit the expenditure of the different items in each division to the amount above authorized, as prescribed by law.'' The appropriation ordinances were general appropriation ordinances and made provisions for all the expenses of the city for the respective fiscal years in question.

The defendant introduced in evidence an ordinance passed August 31, 1918, section 1 of which is as follows: ''That from and after the 15th day of August, 1918, the salaries and compensation of the members of the Police and Fire Divisions of the city shall be as follows:

### Police Division

| | | |
|---|---|---|
| Salary of City Marshal at the rate of | $1,660.00 | per annum |
| Salary of Lieutenant at the rate of | 1,300.00 | per annum |
| Salary of Two Sergeants (each) at rate of | 1,260.00 | per annum |
| Salary of Thirteen Patrolmen (each) at rate of | 1,200.00 | per annum |
| Salary of Three Merchant Police (each) at rate of | 330.00 | per annum |

### Fire Division

| | | |
|---|---|---|
| Salary of Fire Marshal at the rate of | $1,660.00 | per annum |
| Salary of Captain No. 1, Station at the rate of | 1,320.00 | per annum |
| Salary of other Captains (each) at the rate of | 1,260.00 | per annum |
| Salary of Twenty Firemen (each) at the rate of | 1,200.00 | per annum |

Defendant introduced in evidence an ordinance passed January 26, 1925, which amended an ''Ordi-

nance Concerning the Police and Fire Department,"
passed by the council of the city on April 22, 1907.
Section one of the ordinance passed January 26, 1925,
establishes the police department and the membership
thereof. Section two thereof fixes the annual salaries
of the officers and members of the police department.

Ordinances passed on December 27, 1932, changed
the personnel in the police and fire departments. An
ordinance of February 15, 1932, provides for a change
in the salaries of officers and members of the police
and fire departments by deducting one month's pay
from the annual pay roll.

The ordinance of August 31, 1918, fixed the salaries
of officers and members of the police and fire depart-
ments at less, in each instance, than was paid during
the time in question; the ordinance of January 26,
1925, fixing salaries in the police department were, in
general, slightly more than is claimed by plaintiffs as
due them for 1934, and January, 1935, but which were
considerably less than plaintiffs' claim for 1932.

Morgan H. Brightman, commissioner of accounts
and finances, testified that the appropriation ordi-
nances of the city are prepared by determining, so far
as possible, the expected revenue, and allocating the
same among the different departments in proportion
to what the city council believes to be their require-
ments; that the amounts relative to salaries in the
police and fire departments in the appropriation ordi-
nances were based largely on the requirements sub-
mitted by the head of those departments; that in the
1934 appropriation, the total figures for salaries were
increased to enable the city to pay an increase pro-
vided the revenue warranted it; that the salaries of
members of the police and fire departments are fixed
by action of the city council whenever it is necessary,
in some instances by resolution, and in others by agree-
ment among the commissioners, carried out by the

heads of the departments, followed by council action and approval of the pay rolls; that subsequent to the ordinance of February 15, 1932 (changing salaries) further curtailments in revenue made necessary further changes in salaries and they were reduced by agreement of the members of the city council after which the reduced pay rolls were formally approved by the council and made a part of the minutes of the council proceedings. This reduction was substantially 25 per cent of the wages prevailing prior to January 1, 1932; that he is the city clerk and keeper of the records of the city and the city council; that no other action by the city council was taken other than testified to by him.

After this evidence was introduced, the court gave his opinion indicating that the writ should issue. Final judgment was thereafter entered, finding the issues for the plaintiffs except as to their right to one month's salary for 1932. The plaintiffs excepted to that part of the final order finding the ordinance of February 15, 1932, a valid ordinance and they have filed a cross appeal attacking that part of the final order.

It is clear from the plaintiffs' petition and their proof that their claim to additional pay from the city as unpaid balances of their monthly salaries rests solely on the soundness of the proposition that the appropriation ordinances fixed the amount of their salaries. Section 101 of the Cities and Villages Act, Ill. State Bar Stats. 1935, ch. 24, ¶ 92; Jones Ill. Stats. Ann. 21.192 (Smith-Hurd, Ill. Rev. Stats.) provides as follows: "The city council of cities . . . shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, and in such ordinance shall specify the

objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose.'' This provision of the statute is mandatory and has been held to have been enacted for the protection of the taxpayer. *People v. Sergel,* 269 Ill. 619; *City of Cairo v. Campbell,* 116 Ill. 305. The object of the statutory requirement is to enable the taxpayer to compel the application of public funds to the purposes for which they were appropriated; to prevent the application of such funds to other purposes and to prevent the raising or expenditures of greater sums of money than are necessary for legitimate corporate purposes. *Siegel v. City of Belleville,* 349 Ill. 240. Neither from the historical view, nor under definitions of the courts, is it justifiable to extend the object of an appropriation act, or law, beyond the scope of its purpose as above stated, unless by terms of the act directly, or their repugnance with other laws, as a matter of judicial construction, a different or broader meaning is found in the act.

The history and origin of provisions of law requiring legislative bodies to make appropriations of public funds, which are to be expended by public officers, is well known. Relative to a constitutional provision of the State of California that, ''No money shall be drawn from the treasury but in consequence of appropriation made by law,'' in the case of *Humbert v. Dunn,* 84 Cal. 57, 24 Pac. 111, the Supreme Court of California say: ''It had its origin in parliament in the seventeenth century, when the people of Great Britain, to provide against the abuse of the king and his officers of the discretionary money power with which they were vested, demanded that the public funds should not be drawn from the treasury except in accordance with express appropriations therefor made by parliament; and the system worked so well in correcting the abuses complained of, that our forefathers adopted it, and the

restraint imposed by it has become a part of the fundamental law of nearly every State in the Union.'' The statement of the object of an appropriation act as given by our Supreme Court follows closely the historic reasons for the demand that public funds should not be expended, unless the legislative body made an appropriation therefor. We do not know of any cases extending the object or meaning of an appropriation act beyond the limits as herein stated.

In the case of *United States v. Langston,* 118 U. S. 389, 30 L. Ed. 164, it is held ''that a statute fixing the annual salary of a public officer at a named sum, without limitation as to time, should not be abrogated or suspended by subsequent enactments which merely appropriate a less amount for the services of that officer for particular fiscal years, and which contain no words that expressly or by clear implication modified or repealed the previous law.'' In the case of *State v. Steele,* 57 Tex. 200, it is held that the appropriation of a less sum than is fixed by law as the salary of an officer does not operate as a repeal or amendment of the act fixing the salary. The court in that case says, ''It is not the policy of the law to leave salaries of state officials to be fixed only where the appropriations are made for their payment.'' (*City of Joliet v. Petty,* 96 Ill. App. 450.)

Under the .commission form of government, a city may fix the salaries of firemen and policemen by ordinance, resolution or otherwise. *People v. Kapp,* 355 Ill. 596; *Higler v. City of Cairo,* 245 Ill. App. 383. A general ordinance of the city of Elgin provides that no ordinance of the city shall be held repealed unless expressly so provided or that the older provision or part is so repugnant to the newer provisions or part that both cannot stand. We find no repugnance between the ordinance fixing the salaries of the plain-

tiffs, nor the commissioner's actions in determining the salaries of the plaintiff by adopting the pay rolls, and the appropriation ordinances in question. (*U. S. v. Langston, supra; City of Joliet v. Petty, supra; People v. Downers Grove Sanitary District*, 359 Ill. 601.)

The plaintiffs having failed to show a clear legal right to the writ of mandamus, as prayed for in their petition, the judgment awarding the writ is reversed.

*Judgment reversed.*